ST. PAUL RAMSEY MEDICAL CENTER, Petitioner-
Respondent,†

v.

Wisconsin DEPARTMENT OF HEALTH & SOCIAL SERVICES,
Respondent-Appellant.

Court of Appeals

*No. 93–3435. Submitted on briefs May 10, 1994.—Decided
June 14, 1994.*

(Also reported in 519 N.W.2d 681.)

†Petition to review denied.

For the respondent-appellant the cause was submitted on the brief of *James E. Doyle*, attorney general and *Donald P. Johns*, assistant attorney general.

For the the petitioner-respondent the cause was submitted on the brief of *Warren Lee Brandt* of Prescott and *Debra L. Wojtowski* of River Falls.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Wisconsin Department of Health and Social Services (DHSS) appeals a judgment reversing its order concluding that St. Paul Ramsey Medical Center (SPR) is not entitled to Medical Assistance payments for services it rendered to Thomas Houser III. DHSS contends that the trial court erred by (1) concluding that SPR substantially complied with the application requirements in ch. 49, STATS., and that such substantial compliance was sufficient to entitle SPR to reimbursement and (2) applying equitable doctrines in a ch. 227, STATS., review of an administrative decision. Because we conclude that DHSS properly applied relevant provisions of ch. 49 to this case and that application of the doctrine of equitable estoppel is not justified, the judgment is reversed.

The parties stipulated to the following facts: On June 29, 1990, Houser sustained serious burns over 90% of his body in an apparent suicide attempt. Houser was transported from Sacred Heart Hospital in Eau Claire to SPR, a certified border provider under the

Wisconsin Medical Assistance program. Several days later the Eau Claire County Department of Human Services (ECHS) received the following from SPR: a mail gram informing the agency that it had admitted Houser for treatment. and was unable to obtain prior authorization because of the emergent nature of his need for care, a sworn statement from Houser's father that he will need to apply for medical assistance, a General Relief Emergency Medical financial sworn statement and a physician's statement. ECHS is the county agency responsible for determining applicants' eligibility for medical assistance.

Shortly after Houser's admission, SPR also spoke with Houser's mother, who informed SPR that she would apply to ECHS for payment of Houser's medical expenses. When SPR subsequently contacted ECHS, ECHS informed SPR that it would be handling Houser's medical benefits application. ECHS also informed SPR that Houser's expenses would be covered under the County General Relief Program and would be paid at medical assistance rates, but would not be paid prior to Houser's discharge.

Houser remained in SPR until he died on August 4, 1990. The cost of the care he received was $306,155.71. About two weeks after Houser's death, SPR contacted ECHS regarding the payment of Houser's bill. ECHS informed SPR that because of the amount of the bill, it would be best to have Houser's parents apply for social security disability. ECHS informed SPR that Houser's parents would apply for social security disability on his behalf and that if it was denied, ECHS would pay SPR at inpatient medical assistance rates. At the end of August, ECHS sent a $243.84 check to SPR.

From October 1990 through May 1991, SPR contacted ECHS eleven times regarding the status of

Houser's application for social security disability. As of May 16, 1991, ECHS was unable to find any paperwork concerning Houser's social security disability application or to verify the status of any application. On that same date, ECHS advised SPR to apply for medical assistance. SPR subsequently initiated an action to collect the balance of Houser's medical bill.

On May 5, 1992, SPR filed an application for medical assistance on Houser's behalf. Based upon a determination that Houser is a totally permanently disabled person, ECHS certified Houser for medical assistance benefits retroactive to February 1, 1992, in accordance with § 49.47(6)(d), STATS. Because Houser died prior to this eligibility date, none of Houser's treatment costs were payable under medical assistance. SPR's subsequent request for a fair hearing before DHSS to contest ECHS' decision was denied on the grounds that SPR was not a party in interest. In October 1992 Houser's mother assigned her right to request a fair hearing to SPR.

Based upon the parties' stipulations and after a hearing, DHSS' hearing examiner determined that because the medical assistance application was not submitted until May 1992, under § 49.46(1)(b) and § 49.47(6)(d), STATS., the earliest possible date of eligibility was February 1, 1992. The hearing examiner also determined that because the statutes do not confer equitable powers on DHSS, he could not grant payment to SPR based on equitable principles.

SPR appealed DHSS' decision to the trial court, which reversed the decision. The trial court concluded that DHSS' decision unnecessarily placed form over substance when it determined that an application for medical assistance had not been made prior to May 1992. The trial court also concluded that SPR is an

"aggrieved person" entitled to seek judicial review under § 227.01(9), STATS. Finally, the trial court applied equitable estoppel based on its conclusions that certain representations, actions and nonactions by ECHS induced SPR to believe that no further action was required for it to receive reimbursement, and that SPR reasonably relied on ECHS' representations, actions and nonactions to its substantial detriment. The trial court imputed ECHS' actions to the State based on its designation as the State's agent for receiving and determining eligibility of medical assistance applications. Thus, the trial court reversed DHSS' order.

We must first determine whether DHSS correctly concluded that Houser was not eligible for medical assistance benefits prior to February 1, 1992. In determining the correctness of DHSS' determination, we review its decision and not the trial court's. *Richland Sch. Dist. v. DILHR*, 166 Wis. 2d 262, 273, 479 N.W.2d 579, 584 (Ct. App. 1991), *aff'd*, 174 Wis. 2d 878, 498 N.W.2d 826 (1993). Our scope of review of DHSS' decision is identical to that of the trial court. *Appleton v. Transportation Comm'n*, 116 Wis. 2d 352, 356, 342 N.W.2d 68, 70 (Ct. App. 1983).

Here the facts are undisputed, leaving only the issue whether DHSS correctly interpreted and applied relevant provisions of ch. 49, STATS., a question of law. Section 227.57(10), STATS., requires that "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." Our supreme court discussed the appropriate standards of review of an agency's legal conclusions and statutory

interpretation in *Jicha v. DILHR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992):

> This court has generally applied three levels of deference to conclusions of law and statutory interpretation in agency decisions. First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented. (Emphasis in original; citations omitted.)

Because DHSS has gained special expertise through regular and repeated interpretations of ch. 49, we conclude that DHSS' interpretation and application of ch. 49 is entitled to great weight. Under this standard, we uphold the agency's interpretation and application of the statute as long as it is reasonable, regardless of whether other interpretations are reasonable. *See Sauk City v. WERC*, 165 Wis. 2d 406, 413, 477 N.W.2d 267, 270 (1991).

DHSS determined that to be eligible for medical assistance it was necessary for Houser, his parents or his estate to complete an application for medical assistance on a Wisconsin application form and to submit the form to the proper Wisconsin agency. Section 49.47(3)(a), STATS., clearly identifies these prerequi-

sites to become eligible for medical assistance, and SPR does not challenge this portion of DHSS' decision.

DHSS also determined that § 49.47(6)(d) and § 49.46(1)(b), STATS., limit payments to those services rendered no more than three months prior to the month during which the application for medical assistance was submitted, provided the applicant was eligible for assistance during those three months. We conclude that § 49.47(6)(d) and § 49.46(1)(b) unambiguously limits retroactive medical assistance payments to three months prior to the date the application was submitted. Here, the undisputed facts are that Houser's application was not submitted until May 1992. We therefore conclude that DHSS properly determined that under § 49.47(6)(d) and § 49.46(1)(b), Houser's earliest date of eligibility was February 1, 1992. Because Houser died and all of SPR's services were rendered prior to that date, DHSS concluded that § 49.47(6)(d) and § 49.46(1)(b) precluded medical assistance payments to SPR. We therefore conclude that DHSS properly interpreted and applied § 49.47(6)(d) and § 49.46(1)(b) to the facts of this case and uphold DHSS' determination that SPR is not entitled to medical assistance payments for the services it rendered to Houser.

SPR contends, however, that such a strict application of § 49.47(6)(d) and § 49.46(1)(b), STATS., to this case is unfair. SPR asserts that ECHS had in its possession all of the information required to be contained in the application, and the only deficiency is that the information was not on the required form. SPR argues that § 49.47(6)(d) and § 49.46(1)(b) should not be applied to preclude medical assistance payments because SPR substantially complied with the application requirements. SPR asserts that *Figgs v.*

45

*Milwaukee*, 121 Wis. 2d 44, 357 N.W.2d 548 (1984), supports its argument that substantial compliance with the application provisions in § 49.47(3)(a) is sufficient.

■

We need not determine whether substantial compliance is sufficient to satisfy the application requirement because here there was no substantial compliance. This is not a case where an application, although it contained some defects in its content, was timely made. It is undisputed that no application was made until May 1992. While ECHS may have had all of the required information in its possession, it was the applicant's duty, not ECHS' or DHSS' duty, to assemble the information on the proper form.

SPR further argues that the trial court was authorized to use its equitable powers and apply the doctrine of equitable estoppel to modify Houser's eligibility date. SPR asserts that SPR was induced to take no further action because it relied on an ECHS employe's repeated nonactions and assurances that SPR would receive medical assistance payments for services it rendered to Houser.

■

We need not determine whether DHSS or the trial court were authorized to utilize equitable principles in this administrative proceeding because we conclude that SPR failed to meet its burden of proving that the doctrine of equitable estoppel is applicable. Thus, we also need not address the issue of whether SPR has standing to raise equitable estoppel. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

The doctrine of equitable estoppel is not to be freely applied against government agencies. *Sanfelippo v. DOR*, 170 Wis. 2d 381, 391, 490 N.W.2d 530, 534 (Ct. App. 1992). "Estoppel may be applied against the state when the elements of estoppel are clearly present and it would be unconscionable to allow the state to revise an earlier position." *Id.* at 390-91, 490 N.W.2d at 534 (citation omitted). The elements of estoppel are (1) action or nonaction by the person against whom estoppel is asserted (2) upon which the person asserting estoppel reasonably relies (3) to that person's detriment. *Id.* at 390, 490 N.W.2d at 534. The party asserting estoppel has the burden of proving each element by clear and convincing evidence. *Mowers v. St. Francis*, 108 Wis. 2d 630, 633, 323 N.W.2d 157, 158 (Ct. App. 1982).

Here, as in *Sanfelippo*, the action or inaction upon which SPR allegedly reasonably relied is not attributable to the entity against whom SPR seeks to invoke equitable estoppel. All of the conduct underlying SPR's claim is attributable to Diane Nelson, an ECHS employe. While ECHS is the county agency designated by the state to receive medical assistance applications and determine eligibility, ECHS and DHSS are separate entities.

Nelson's conduct, which forms the basis of SPR's claim, is not attributable to DHSS for several reasons. Nelson is a county employe, not a DHSS employe. When Nelson advised SPR about medical assistance, general relief and social security benefits, she was acting on the behalf of ECHS, not DHSS. SPR points to no action or inaction by DHSS or its employes upon which SPR reasonably relied to its detriment. DHSS did not fail to give proper advice to SPR, Houser or his family

regarding the necessity of a proper application for medical assistance. Whatever failures, misadvice or misunderstandings that may have occurred is directly attributable to Nelson and to ECHS. We therefore conclude that SPR's equitable estoppel claim against DHSS must fail.

We do not suggest that Nelson and ECHS' conduct and representations are without any legal effect or that liability may not be imposed upon ECHS as a result of those actions, inactions or representations. The implications, liability and legal effect of that conduct, however, must be determined in a forum other than a judicial review of DHSS' administrative decision.

*By the Court.*—Judgment reversed.