STATE of Wisconsin, Plaintiff-Appellant,

v.

John A. LETTICE, Defendant-Respondent.

Court of Appeals

*No. 97–3708–CR. Submitted on briefs June 8, 1998.—Decided July 21, 1998.*

(Also reported in 585 N.W.2d 171.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Sharon Ruhly,* assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John Allan Pray* of Frank J. Remington Center, University of Wisconsin Law School.

Before Cane, P.J., Myse and Hoover, JJ.

CANE, P.J.  The State of Wisconsin appeals an order dismissing its case against John Lettice on the ground that retrial would violate Lettice's right not to be placed twice in jeopardy for the same offense. It contends the trial court erred when it dismissed the case on double jeopardy grounds because: (1) Lettice's conviction was reversed in an earlier appeal on grounds other than insufficiency of the evidence; (2) the narrow exception barring retrial when prosecutorial misconduct aimed at provoking the defendant into moving for a mistrial occurs is inappli-

cable here because Lettice never moved for a mistrial and any prosecutorial misconduct occurred prior to trial; and (3) Lettice should be estopped from requesting dismissal after he asked for and received a new trial from the appellate court. We reject the State's contentions and affirm the order.

## BACKGROUND

Although the events and facts underlying this appeal are addressed in some detail in our decision in *State v. Lettice*, 205 Wis. 2d 347, 349–51, 556 N.W.2d 376, 377–78 (Ct. App. 1996) (*Lettice I*), we also briefly summarize them here for background purposes. Lettice's jury trial on two counts of first-degree sexual assault of a child was scheduled to be heard before Judge James B. Mohr on Monday, March 7, 1994. On the Friday afternoon before trial, defense attorney Dennis Burgy and Lettice were present in court prepared to argue motions. District Attorney Steven Lucareli entered the courtroom and served Burgy with a criminal complaint charging him with violating § 146.82, STATS., by publicly disclosing a confidential patient health care record. Lucareli also filed a motion to disqualify Burgy on the ground of conflict of interest because of the criminal charge.

The alleged basis for the criminal charge was a motion filed by Burgy approximately two weeks earlier when he sought to admit evidence that the child victim had sexual contact with someone other than Lettice. An offer of proof was submitted with the motion, with an attached copy of Dr. Gina Koeppl's (the State's psychologist) notes identifying another individual as the perpetrator. Some five months prior to trial, the trial court had ruled that Koeppl's notes were not confidential treatment records.

Although the parties were in court for the motions on Lettice's criminal charge, the proceedings were converted to Burgy's initial appearance on the charges by Lucareli. The court released Burgy on his own recognizance, and then heard Lucareli's motion to disqualify Burgy. Lettice informed the trial court that he wanted to keep Burgy as his attorney, and the trial court denied the motion to disqualify.

As a result of the charges being filed, Burgy's trial preparation and emotional state was adversely affected over the weekend. He could not sleep, was anxious, worried and angry, was preoccupied with researching the charges against him, and did not prepare for trial by preparing questions for witnesses, memorizing his opening statement or outlining his closing argument. Burgy was also worried about negative publicity and its possible affect on his legal practice. A reporter contacted Burgy on the day he was charged, and local newspapers ran front-page stories during the trial announcing the charges filed against him.

Burgy did not tell Lettice about his lack of sleep, anxiousness, and decreased trial preparation. On the morning of trial, Lucareli renewed his request for Burgy's disqualification, and the court again inquired about Lettice's wishes. Lettice stated he was ready to proceed to trial and wanted to have Burgy represent him. Burgy then unsuccessfully moved to dismiss the charges against Lettice on grounds of prosecutorial misconduct. The case then proceeded to jury trial, resulting in a guilty verdict, and sentencing. On postconviction motions, Judge Mohr granted Lettice a new trial in the interest of justice, to preserve the integrity of the judicial process and because the prosecutor's

misconduct deprived Lettice of his rights to counsel and due process.

The State appealed Judge Mohr's order for a new trial. We affirmed on the ground that Lucareli's misconduct deprived Lettice of his right to due process by depriving Lettice of a fair trial and by prejudicing his defense. *Lettice I*, 205 Wis. 2d at 355 n.2, 556 N.W.2d at 379 n.2. After our remand to the circuit court, Lettice moved to dismiss the case on the grounds that double jeopardy barred retrial, that the State had compromised his right to trial and that the time lapse had violated his right to due process. Judge Mohr held an evidentiary hearing, but did not rule on the motion at that time. In the meantime, the State moved for Judge Mohr's recusal, and the case was reassigned to Judge Mark A. Mangerson. Judge Mangerson granted Lettice's motion to dismiss on the ground that double jeopardy barred retrial. The State now appeals from that order dismissing the case.

## ISSUES PRESENTED

The State contends the trial court erred by dismissing the case on the ground that retrial would violate Lettice's double jeopardy rights because Lettice never moved for a mistrial and did not request dismissal from either the postconviction court or the court of appeals. It argues that the double jeopardy doctrine and its narrow exception barring retrial in circumstances of prosecutorial misconduct do not apply to Lettice's situation, and that extension of the prosecutorial misconduct exception is not warranted in this case. The State also argues that Lettice should be estopped from requesting and receiving a dismissal from the trial court at the retrial stage because he never raised the issue of dismissal based on double

jeopardy grounds at the postconviction or appeal stages.

Lettice argues that because the prosecutor engaged in egregious misconduct aimed at avoiding an acquittal and the motivation for and effect of the misconduct was not discovered by him until after the trial was completed and he was convicted, the prosecutorial misconduct bar to retrial should be extended to apply to his case, even though he never moved for mistrial. He also asserts he is not estopped from requesting dismissal because the issue of double jeopardy was not ripe for determination until the State decided to proceed with a second prosecution. He also contends the order of dismissal should be affirmed on the ground the prosecutor's misconduct violated his due process rights.

We conclude that (1) Lettice is not estopped from seeking a dismissal based on double jeopardy; (2) Lettice's failure to move for mistrial does not prevent him from asserting that prosecutorial misconduct bars retrial when the prosecutor engaged in misconduct with a covert motive which Lettice was not aware of until after trial; and (3) double jeopardy bars retrial because the prosecutor's action was undertaken with the intent to prevent an acquittal or to prejudice the possibility of an acquittal that the prosecutor believed would occur in the absence of his misconduct. The trial court's order of dismissal is therefore affirmed.

## STANDARD OF REVIEW

This case presents an issue of first impression in Wisconsin, as the trial court also recognized. It found as a mixed matter of law and fact that Lettice's failure to move for mistrial during the course of the first trial did not deprive him of the right to raise a double jeop-

ardy claim on remand for a new trial. It also found that the timing and focus of Lucareli's "truly evil scheme" deprived Lettice of effective assistance of counsel;[1] that the criminal charges filed against Burgy constituted a "specious lawsuit," the purpose of which was to interfere with Lettice's right to counsel; and that Lucareli achieved his purpose to either get an adjournment or to put a cloud over the defense in the form of impairing defense counsel and that the defense was in fact impaired as a result. It also found that Judge Mohr's offer of a continuance with the opportunity to come back at a different time with a new attorney to try the case was not a meaningful option for Lettice. It echoed the court of appeals' determination that Lettice's trial was not fair, and stated, "I think it's of no consequence that Mr. Lettice didn't specifically make a motion for a mistrial under all the circumstances where the state had absolutely emasculated his right to effective assistance of counsel." Finally, it also concluded, based on *State v. Mink*, 146 Wis. 2d 1, 10, 429 N.W.2d 99, 102 (Ct. App. 1988), that Lettice's failure to specifically request dismissal based on double jeopardy before the court of appeals did not prevent him from later raising it before the trial court because double jeopardy did not attach until the State decided to retry him.

■

We conclude that the question of whether the double jeopardy clauses of the United States and Wisconsin constitutions bar retrial, in the absence of a motion for mistrial by the defendant, where pretrial prosecutorial misconduct violates a defendant's pro-

---

[1] *Judge Mohr found that there was no probable cause for initiating the charges against Burgy because of his earlier specific ruling that the record in question underlying the criminal charge against Burgy was not a confidential treatment record.*

tected interests under the double jeopardy clause presents a mixed question of law and fact. Whether constitutional double jeopardy protections apply is a question of law we review de novo. *State v. Kramsvogel*, 124 Wis. 2d 101, 107, 369 N.W.2d 145, 147–48 (1985). Whether a prosecutor intended to provoke a mistrial in order to gain another chance to convict or harass the accused is a question of fact; thus, a trial court's determination that the prosecutor acted with intent to provoke a mistrial will not be overturned unless it is clearly erroneous. *See State v. Hampton*, 207 Wis. 2d 367, 384, 558 N.W.2d 884, 892 (Ct. App. 1996) (citing *State v. Quinn*, 169 Wis. 2d 620, 625, 486 N.W.2d 542, 544 (Ct. App. 1992)).

## DISCUSSION

### 1. Estoppel

The State contends that Lettice should be estopped from requesting a dismissal at the retrial stage because he never raised the issue of dismissal based on double jeopardy grounds at the postconviction or direct appeal stages. It argues the theory of judicial estoppel applies because Lettice's request for a new trial at the postconviction stage and the trial stage is clearly inconsistent with his current position of seeking dismissal. We disagree.

The first requirement of judicial estoppel is that a party's assertion of a later position be clearly inconsistent with its earlier position. *State v. Petty*, 201 Wis. 2d 337, 348, 548 N.W.2d 817, 821 (1996). Judicial estoppel is intended "to protect the judiciary as an institution from the perversion of judicial machinery." *Id.* at 346, 548 N.W.2d at 820. Here, Lettice asked for a new trial

because he believed his defense at his first trial had been prejudiced and he did not receive a fair trial. He justifiably did not raise the issue of double jeopardy at either stage because the issue was not ripe for determination at that time. We have stated that in a retrial situation

> the burden of going forward is on the state. The state may decide not to pursue the case further, to enter into plea negotiations or to try the defendant again. Only when the latter option is chosen does the issue of double jeopardy arise. At that point, the defendant must move for dismissal on double jeopardy grounds to avoid waiver.

*Mink*, 146 Wis. 2d at 10, 429 N.W.2d at 102.

Because Lettice did not assert a position clearly inconsistent with a previous position, and because his ability to assert double jeopardy as grounds for dismissal did not arise until the State decided to reprosecute him, we conclude that he is not judicially estopped from seeking dismissal at retrial after his successful appeal results in the grant of a new trial.

We are equally unpersuaded by the State's contention that Lettice should be equitably estopped from requesting dismissal after he sought and received a new trial. The elements of equitable estoppel are: "(1) action or nonaction by the person against who estoppel is asserted (2) upon which the person asserting estoppel reasonably relies (3) to that person's detriment." *St. Paul Ramsey Med. Ctr. v. DHSS*, 186 Wis. 2d 37, 47, 519 N.W.2d 681, 685 (Ct. App. 1994). The party asserting estoppel has the burden of proving all the elements by clear and convincing evidence. *Id*. The State argues

it reasonably relied on Lettice's request for a new trial to its detriment by not petitioning for review of *Lettice I.* The State does not develop its argument. It states that "[h]ad it realized the high stakes involved, it most likely would have [petitioned for review]," but does not show by clear and convincing evidence that it reasonably relied to its detriment. Because the State provides only conclusory statements to support its arguments, we decline to address the issue further. *State v. Pettit,* 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992).

## 2. Double Jeopardy

The double jeopardy clause of the Fifth Amendment to the United States Constitution protects a criminal defendant from repeated prosecution for the same offense. *United States v. Dinitz,* 424 U.S. 600, 606 (1976). It provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U. S. CONST. Amend. V. The Wisconsin Constitution provides the same protection in art. I, § 8, which states: "[N]o person for the same offense may be put twice in jeopardy of punishment." The clause protects a defendant's valued right to have his or her trial completed by a particular tribunal. *Wade v. Hunter,* 336 U.S. 684, 688–89 (1949). It also protects a defendant from repeated attempts by the government, with all its power and resources, to convict him of an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. *Green v. United States,* 355 U.S. 184, 187 (1957).

The protection of the double jeopardy clause does not, however, provide a blanket protection against

79

retrial by the government. *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). In the case where a defendant successfully challenges his or her conviction on appeal, the double jeopardy clause does not limit the government's power to retry a defendant unless the conviction has been reversed on the grounds of insufficiency of the evidence. *Id.* at 676 (citing *United States v. DiFrancesco*, 449 U.S. 117, 130–31 (1980)).

When the defendant's first trial is terminated, the circumstances of the termination govern whether the double jeopardy clause bars retrial. If the trial is terminated over the defendant's objection and without his or her consent, such as upon the government's motion for mistrial or the court's sua sponte decision, then retrial is barred unless the proceedings were terminated because of manifest necessity. *See Kennedy*, 456 U.S. at 672. The manifest necessity standard protects the defendant's important right to have his or her case finally decided by the tribunal first impaneled to hear it while at the same time maintaining "the public's interest in fair trials designed to end in just judgments." *Id.* (quoting *Wade*, 336 U.S. at 689).

When the first trial is terminated upon the defendant's own motion, however, the general rule is that retrial is not barred. *Kennedy*, 456 U.S. at 672; *Quinn*, 169 Wis. 2d at 624, 486 N.W.2d at 543. The rationale for this rule is that the defendant's right to have his or her trial heard by the first tribunal has not been interfered with and the defendant has continued to retain control over the protection of that right. *Dinitz*, 424 U.S. at 607–08; *State v. Copening*, 100 Wis. 2d 700, 708–09, 303 N.W.2d 821, 826 (1981).

However, even when the defendant moves for or consents to a mistrial, there is a narrow exception to the general rule that double jeopardy does not bar

retrial when the defendant moves for mistrial in the initial proceedings. *Kennedy*, 456 U.S. at 673 (citations omitted); *Copening*, 100 Wis. 2d at 712, 303 N.W.2d at 827–28. In *Kennedy*, the Court recognized the difficulty of applying the general rule in a situation where a prosecutor's actions giving rise to the motion for mistrial were done "in order to goad the [defendant] into requesting a mistrial." *Id.* at 673 (quoting *Dinitz*, 424 U.S. at 611).

The United States Supreme Court in *Kennedy* adopted a standard that examines the prosecutor's intent when determining whether retrial is barred where prosecutorial misconduct provokes a defendant to move for a mistrial. The Court explained:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial *absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.* A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Id.* at 675–76 (citations omitted; emphasis added). The Court summarized its decision, stating:

81

We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id.* at 679.

Wisconsin adopted the *Kennedy* standard in *Quinn* and *Hampton*. "The Double Jeopardy Clause bars a retrial after a defendant successfully moves for a mistrial only if the prosecutor acted with the intent to subvert the defendant's double jeopardy protection." *Hampton*, 207 Wis. 2d at 384, 558 N.W.2d at 892 (quoting *Quinn*, 169 Wis. 2d at 625, 486 N.W.2d at 544). As stated previously, however, neither the United States nor Wisconsin Supreme Courts have addressed the issue presently before us; that is, whether the double jeopardy clause affords protection against retrial to a defendant who has not moved for a mistrial because he or she is not fully aware at trial of the motivation for or effect of the prosecutor's misconduct.

The State argues that since Lettice never moved for a mistrial, he cannot now avail himself of the *Kennedy* exception for prosecutorial misconduct. It refers us to *Beringer v. Sheahan*, 934 F.2d 110 (7th Cir. 1991), where the court addressed the threshold issue of whether the *Kennedy* prosecutorial misconduct exception applies when the defendant did not move for a mistrial based on prosecutorial misconduct but did successfully appeal on that ground. There, the court determined that a mistrial motion was required. *Id.* at

112. Central to the *Beringer* court's analysis was the notion that defendants not be allowed to manipulate the trial process to be able to invoke the double jeopardy bar when prosecutorial misconduct is noticeably present. It stated:

> The absence of a mistrial motion can mean one of two things: either the defendant does not believe the misconduct has completely eliminated the prospect of an acquittal or the defendant is refusing the prosecutor's gambit. In the first case, "[t]he dangers which [the double jeopardy clause] seeks to avoid are more attenuated when the first trial goes to verdict, since the defendant has not lost his chance for acquittal by the first jury." In the second case, the defendant, incorrectly assuming that the double jeopardy clause is a sanction to be visited upon wayward prosecutors, refuses to move for a mistrial in hopes of obtaining a reversal on appeal and invoking the double jeopardy bar to avoid retrial. We see little reason, however, to encourage defendants to engage in manipulative schemes calculated to sucker unscrupulous prosecutors into committing increasingly flagrant misconduct.

*Id.* at 113.
█.

We decline to follow *Beringer* as the State suggests because we find it factually and procedurally distinct.[2] In *Beringer*, the defendant was aware of the prosecutor's misconduct during the trial, and while the

---

[2] We reach the same conclusion regarding *Iowa v. Swartz*, 541 N.W.2d 533 (Iowa App. 1995), also cited by the State. There the court determined that even when prosecutorial misconduct is present, if the misconduct does not result in a mistrial, the defendant's interest in concluding the case with the first jury is not impaired. *Id.* at 540.

defendant made three motions for mistrial, none was based on the ground of prosecutorial misconduct. *Id.* at 111. In the case at hand, Lettice was not aware of the egregious nature of Lucareli's misconduct or its improper purpose until the postconviction stage. At trial, the only action taken by Lucareli was the filing of charges and the attempt to have Burgy disqualified. The misconduct became apparent only after trial, when Lucareli tried to have the charges against Burgy unilaterally dropped and eventually formally dismissed on the Monday following the verdict. This information was later combined with the testimony of Assistant District Attorney Strong who testified that Lucareli told him he needed an adjournment and believed that by charging Burgy he could get an adjournment when he discovered the psychologist's report in the file and stated "This is it."

Furthermore, we do not conclude this is the type of case against which *Beringer* tries to guard. Here, there is no concern that Lettice was aware of the misconduct and strategically chose to take his chance with the first jury despite the prosecutor's misconduct. Nor did Lettice sit back and wait to see the result of the trial with the idea that even if convicted he could raise the prosecutorial misconduct exception bar to retrial at a later date. The trial court found that Lettice was faced with a choice of proceeding to trial with the attorney who had represented him throughout the case, and whom he trusted with his defense. It also found that Lettice could not knowingly and voluntarily have decided to accept a continuance because he was unaware of the effect the charges had on his trial counsel. Under the circumstances of this case, we therefore reject the State's argument that Lettice's failure to move for a mistrial prevents him from asserting that

prosecutorial misconduct aimed at interfering with his constitutional rights bars retrial.

Next, the State argues that even if we extend the *Kennedy* exception to cover situations where the defendant has not moved for or obtained a mistrial, double jeopardy still does not bar retrial because: (1) the prosecutorial misconduct did not provoke Lettice to move for a mistrial; (2) Lettice chose to proceed with the first trial despite the prosecutorial misconduct; that is, Lucareli's filing of charges against Burgy; (3) Lucareli's misconduct occurred prior to the trial and Lettice was aware of it; and (4) the misconduct was not done with the intention of aborting the first trial once it had commenced. These arguments are unpersuasive, especially in light of the trial court's findings, which the State does not challenge.

The prosecutorial misconduct did not provoke Lettice to move for a mistrial because the misconduct was not in the form of trial errors but rather was Lucareli's insidious plan to force Burgy's removal as defense counsel to avoid going to trial on the date for which it was set. Although Lucareli's misconduct occurred prior to trial, Lettice was aware that the charges had been filed and nevertheless declined a continuance and proceeded to trial at the scheduled time, we are not prevented from extending the *Kennedy* exception. The trial court found that under the circumstances known to Lettice at the time of trial, Lettice could not knowingly and intelligently decide to forego swearing in the first jury and avoiding the first jeopardy attachment. He also did not know how Lucareli's actions had and would continue to affect his attorney, nor could he know at that time that the filing of criminal charges against Burgy was part of Lucareli's design to prevent Lettice's case from going to trial at the scheduled time.

Finally, although the prosecutor's misconduct was not aimed at aborting the first trial once it had commenced, the trial court did find that it was done with the intent to prevent the trial from proceeding as scheduled or to put such a cloud over the defense that it would not be able to proceed as the prosecutor expected. The State has not provided any reason, nor do we see one, which justifies differentiating prosecutorial conduct motivated by a fear of an acquittal once the trial has started from a prosecutor's fear of the same thing on the virtual eve of trial, who then undertakes a plan to undermine the scheduled trial process.

The record demonstrates that the trial court findings are supported by substantial evidence. Based on our review, and the State's lack of challenge, we affirm the trial court's findings of fact regarding Lucareli's conduct, the effect of that conduct on Attorney Burgy, the effect of the conduct on the defense and trial proceedings, and the resulting prejudicial effect on Lettice's constitutional rights. We therefore conclude that the factual and procedural differences present in Lettice's case do not preclude extension of the *Kennedy* exception where the prosecutor has intentionally engaged in misconduct aimed at provoking the defendant to ask for or consent to a continuance of the trial because of the prosecutor's fear of acquittal in the absence of the misconduct.

Finally, the State contends the trial court erroneously relied on *Copening*. It argues that the double jeopardy bar envisioned by *Copening* only arises when the prosecutor acts with the intent to abort the first trial once it has commenced, and that since Lucareli's actions occurred prior to the trial commencing, the rationale of *Copening* is inapplicable. We reject this argument for the same reasons stated above, while also

noting that we review de novo the applicability or extension of *Copening* to the facts of this case.

In *United States v. Wallach*, 935 F.2d 445 (2nd Cir. 1991) (*Wallach I*), the second circuit held that prosecutorial misconduct may be a bar to retrial even in the absence of a mistrial in the first case. In *Wallach I*, after charges were reinstituted against the defendant, the defendant moved to dismiss on the grounds double jeopardy barred a retrial based on the reversal of his conviction because of prosecutorial misconduct. Although the court in *United States v. Wallach*, 979 F.2d 912, 913 (2nd Cir. 1992) (*Wallach II*), did not ultimately conclude that the factual predicate for extending *Kennedy* to bar retrial—that is, deliberate prosecutorial misconduct undertaken to avoid an acquittal that the prosecutor believed was likely in the absence of his misconduct—was present, it nevertheless stated the rule to be followed:

> If any extension of *Kennedy* beyond the mistrial context is warranted, *it would be a bar to retrial only where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct.* . . . Indeed, if *Kennedy* is not extended to this limited degree, a prosecutor apprehending an acquittal encounters the jeopardy bar to retrial when he engages in misconduct of sufficient visibility to precipitate a mistrial motion, but not when he fends off the anticipated acquittal by misconduct of which the defendant is unaware until after the verdict. There is no justification for that distinction.

*Wallach II*, 979 F.2d at 916 (emphasis added). The second circuit again affirmed the extension of *Kennedy*, stating that:

[T]he Double Jeopardy Clause protects a criminal defendant from multiple successive prosecutions for the same offense that arise from prosecutorial over-reaching engaged in with the deliberate intent of depriving him of having his trial completed by a particular tribunal or prejudicing the possibility of an acquittal that the prosecutor believed likely.

*United States v. Pavloyianis*, 996 F.2d 1467, 1473 (2nd Cir. 1993).

We determine it is justified to adopt the extension of *Kennedy* as stated in *Wallach II* and as adopted in *Pavloyianis*.[3] We conclude that Lettice's failure to request a mistrial or to consent to a continuance does not prevent him from asserting the prosecutorial mis-

---

[3] Lettice also cites persuasive authority from various states where courts have extended the application of the *Kennedy* exception regardless of whether defendant has moved for a mistrial where prosecutorial misconduct has deprived the defendant of the valued interests protected by the double jeopardy clause. *See State v. D'Auria*, 492 S.E.2d 918, 920 (Ga. App. 1997) (when defendant's conviction is reversed on appeal, prosecutorial misconduct bars retrial when the prosecutor intended "to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct"); *State v. Colton*, 663 A.2d 339, 346 (Conn. 1995) (agreeing that *Kennedy* should be extended to bar a new trial, even in the absence of a mistrial or reversal because of prosecutorial misconduct, if the prosecutor in the first trial engaged in misconduct with the intent to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct); and *Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1992) (holding that state double jeopardy clause prohibits retrial when conduct of prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial).

conduct bar to retrial. We agree there is no reasonable justification for an exception that rests on the prosecutor's cleverness and ability to keep his or her misconduct, and motivation therefor, hidden from the defense during the trial. The reasons for expanding the *Kennedy* exception in this case are especially compelling where the prosecutor's conduct was undertaken out of fear that the defendant would be acquitted in the first scheduled trial if he did not either obtain a continuance or upset defense counsel to the extent that his effectiveness would certainly be thwarted, and where the defendant was unaware until after conviction of the perverse effect Lucareli's actions had on his defense.

We specifically hold that even in the absence of a motion for mistrial, the double jeopardy clause bars retrial when the prosecutorial misconduct is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct. *See Wallach II*, 979 F.2d at 916. This protects a defendant from multiple successive prosecutions for the same offense that result from prosecutorial misconduct done with the deliberate intent of interfering with the defendant's right to have his trial completed by a particular tribunal or by prejudicing the possibility of an acquittal that the prosecutor believed likely. *See Pavloyianis*, 996 F.2d at 1473.

Here, the record shows that Lucareli believed he needed an adjournment of the scheduled trial; he attempted to postpone the proceedings by motion which was denied; he then searched his file for another mode by which to avoid going to trial. He brought specious charges against the defense attorney and attempted to have him disqualified, which, if successful, would have achieved his purpose. However, even

without disqualifying the defense attorney, the prosecutor still obtained his objective because of the sustained negative prejudicial effect his actions had on the defense. The egregious nature of his conduct was compounded by his speedy post-trial efforts to have the criminal charges dismissed against the defense attorney, which also support the conclusion that his purpose in filing the criminal charges was to avoid an acquittal. Furthermore, it has been clearly determined that Lucareli's misconduct deprived Lettice of his right to a fair trial and prejudiced his defense. *See Lettice I*, 205 Wis. 2d at 355, 556 N.W.2d at 379.

## CONCLUSION

In summary, we conclude that (1) Lettice may assert prosecutorial misconduct as a bar to retrial despite his failure to move for a mistrial on those grounds because he was unaware of the extent and effect of the prosecutor's misconduct until after trial; (2) the prosecutor's misconduct was undertaken with the intent to prevent an acquittal, or to prejudice the possibility of an acquittal, he believed was likely in the absence of his misconduct; and (3) Lettice was neither judicially nor equitably estopped from requesting a dismissal after receiving an order for a new trial on appeal. We therefore affirm the trial court's order of dismissal.[4]

---

[4] Lettice also contends that the trial court's order of dismissal should be affirmed because the prosecutor's misconduct violated his due process rights. Because we affirm the order of dismissal on double jeopardy grounds, we need not address this issue. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989).

*By the Court.*—Order affirmed.