PER CURIAM.
¶1 Caleb Rave appeals a judgment of conviction for one count of first-degree child sexual assault and an order denying his postconviction motion to set aside the judgment. An initial, partial trial ended when the circuit court declared a mistrial. A second, completed trial resulted in the conviction. The court declared the mistrial after discovering, during the initial trial, that a significant set of evidentiary issues that the court was required to resolve before trial had not been resolved. After Rave was convicted at the second trial, he filed a post-conviction motion based on the Double Jeopardy Clause of the federal and state constitutions,[1] which was denied by the circuit court. Rave makes two closely related arguments on appeal. He argues that (1) the court erroneously exercised its discretion in declaring a mistrial because there was not a manifest necessity calling for a mistrial, and (2) he was denied effective assistance of counsel because his trial attorney failed to move to dismiss the charges against him before the second trial on the ground of double jeopardy. We reject Rave's arguments and affirm.
BACKGROUND
¶2 The State filed a criminal complaint charging Rave with three counts of first-degree sexual assault of a child under the age of 13, with three alleged victims, J.A.B., Z.J.C., and C.M.G., each a violation of WIS. STAT . § 948.02(1)(e) (2015-16).[2] As part of the State's investigation, each alleged victim was interviewed, and each interview was captured in an audiovisual recording.
¶3 In compliance with WIS. STAT. § 908.08(2)(a), the State filed a notice of intent to introduce the recordings. Section 908.08 allows for the admission of recorded child witness interviews that meet specified requirements, which must be found by the circuit court before they may be played at a trial. Under § 908.08(1), a circuit court "may admit into evidence" in any criminal trial "the audiovisual recording of an oral statement of a child who is available to testify." Section 908.08(2)(b) requires that the court conduct a pre-trial hearing to rule on the admissibility of such recordings, establishing a set of predicate findings involving various characteristics of the child and the recording. These characteristics include the child's health, age, and familial relationship to those involved in the underlying proceeding. Sec. 908.08(2)(b), (3) - (4). "At or before the hearing, the court shall view the [recorded] statement" or statements. Sec. 908.08(2)(b).
¶4 Contending that WIS. STAT. § 908.08(3) required predicate findings that could not be established, Rave moved to suppress each recording. The circuit court held a hearing to consider this motion, in addition to other pretrial motions that are not pertinent to this appeal.[3]
¶5 At this hearing, the parties disputed whether the recordings demonstrated that the alleged victims understood the difference between the truth and a lie, which is one predicate for admission. See WIS. STAT. § 908.08(3)(c). The court noted that Rave intended to call an expert regarding interviews of alleged child victims of crime to support his contention that the statements in the recordings were unreliable.
¶6 After Rave's counsel summarized aspects of what Rave's expert would testify to regarding the recordings, Rave's counsel and the court had the following exchange:
THE COURT: But [the expert] will not take the stand and say that in her professional judgment and in her expert opinion that the standards of the statute have not been met?
[RAVE'S COUNSEL]: No.
THE COURT: Then your motion to suppress is denied.
The parties now agree that the court failed to properly assess whether the recordings were admissible under the requirements of WIS. STAT . § 908.08. Surprisingly, neither side at the hearing called to the court's attention the fact that it had not applied the proper standards, but had instead addressed only a collateral expert issue.
¶7 At the initial jury trial, without contemporaneous objection by the defense, the court permitted the State to play the recording of the interview of Z.J.C. for the jury. After the court excused the jury for the lunch break, the court and the parties reviewed the history of the pretrial hearing regarding the recordings. This included a discussion of whether the court had complied with the requirements of WIS. STAT . § 908.08 prior to allowing the State to play the recording of the Z.J.C. interview. The court determined that the statute had not been complied with. Neither side now disputes that determination.
¶8 The court then made a finding that the Z.J.C. recording was admissible, consistent with WIS. STAT . § 908.08. Rave's counsel observed that the court made these findings regarding the Z.J.C. recording only after the video had already been shown to the jury. The court asked Rave's counsel if she was moving for a mistrial, and she answered no. The court excused the parties. After the break, but before calling the jury back into the courtroom, the court declared a mistrial based on its determination that it was "presented with a situation where there [would be] clear error proceeding with the trial without the Court having complied with [§] 908.08."
¶9 Two days later, the court held a second evidentiary hearing regarding the admissibility of the recordings. The court explained that it had not previously understood, including at the time of the prior evidentiary hearing on the recordings, that such recordings are admissible under WIS. STAT. § 908.08 only if the circuit court first finds that the predicates in § 908.08(3) are met. Applying the standards under § 908.08, the court found that all three recordings would be admissible at a second trial. Neither side now challenges these determinations.
¶10 The second, ultimately completed, trial was held approximately one month after the second evidentiary hearing. The jury found Rave not guilty of first-degree sexual assault of J.A.B. and guilty of first-degree sexual assault of C.M.G. The circuit court dismissed the charge related to Z.J.C. based on a deadlocked jury.[4]
¶11 After Rave was sentenced on the single count of conviction, he filed a post-conviction motion to vacate the judgment of conviction on two grounds, both of which he renews on appeal: that there was no manifest necessity for the court to declare a mistrial; and that he was denied his constitutional right to effective assistance of counsel because his trial attorney did not move, before the second trial, to dismiss the charges on the ground that a second trial would violate his constitutional right against being subject to double jeopardy. The court denied Rave's post-conviction motion. Rave appeals.
DISCUSSION
¶12 We conclude that, under the unusual circumstances presented here, there was a manifest necessity for the court to declare a mistrial sua sponte. There was a manifest necessity to ensure that the jury was not presented with inadmissible evidence that went to the heart of each charge-whether that might be the complete version of all three recordings, some portions of some, or no portion of any-after the court had the opportunity to consider reasoned, supported arguments from both sides. Our conclusion that a mistrial was justified dictates the outcome on the ineffective assistance of counsel issue, because a double jeopardy motion would have been meritless. Accordingly, we affirm the sua sponte mistrial declaration and the postconviction motion ruling.
¶13 "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects a criminal defendant from repeated prosecution for the same offense." State v. Lettice , 221 Wis. 2d 69, 80, 585 N.W.2d 171 (Ct. App. 1998). Mistrials do not necessarily violate the double jeopardy clause even though they allow for more than one trial on the same offense. "If the trial is terminated over the defendant's objection and without his or her consent, such as upon ... [a] court's sua sponte decision, then retrial is barred unless the proceedings were terminated because of manifest necessity."[5] Id .; see also United States v. Dinitz , 424 U.S. 600, 606-07 (1976) (the question is "whether 'there [was] a manifest necessity for the (mistrial), or the ends of public justice would otherwise be defeated.' ") (quoted source omitted). "A 'manifest necessity' warranting a mistrial is a high degree of necessity." State v. Moeck , 2005 WI 57, ¶37, 280 Wis. 2d 277, 695 N.W.2d 783 (footnote and quoted source omitted).
¶14 "The level of deference we accord a circuit court's order for a mistrial depends on the particular facts of each case. There is a spectrum of deference to a circuit court's exercise of its discretion in granting a mistrial." Id. , ¶41 (footnotes omitted). Among those " 'trial problems which may warrant a mistrial and which vary in their amenability to appellate scrutiny,' " a deadlocked jury or defense counsel's improper arguments " 'fall[ ] in an area where the trial judge's determination is entitled to special respect.' " State v. Seefeldt , 2003 WI 47, ¶27, 261 Wis. 2d 383, 661 N.W.2d 822 (quoting Arizona v. Washington , 434 U.S. 497, 510 (1978) ).
¶15 Although we may in some circumstances afford "special respect" to a mistrial decision, we nevertheless must satisfy ourselves that "the circuit court exercised sound discretion in ordering a mistrial." Seefeldt , 261 Wis. 2d 383, ¶13. Various considerations are pertinent:
We have described sound discretion as "acting in a rational and responsible manner."... Sound discretion requires giving both parties a full opportunity to explain their positions and considering alternatives such as a curative instruction or sanctioning counsel. Sound discretion also requires that a circuit court ensure that the record reflects that there is an adequate basis for a finding of manifest necessity. Finally, "[s]ound discretion is not exercised when the circuit court fails to consider the facts of record under the relevant law, bases its conclusion on an error of law or does not reason its way to a rational conclusion."
Moeck , 280 Wis. 2d 277, ¶43 (footnotes and quoted source omitted).
¶16 Stricter scrutiny is appropriate when the prosecution's conduct was the basis for the mistrial. See Seefeldt , 261 Wis. 2d 383, ¶¶25, 30-32. However, Rave does not contend that the State's conduct here contributed to the court's decision to declare a mistrial, nor does Rave contend that the State's actions were geared toward goading him into requesting or the court into declaring a mistrial.
¶17 With those legal standards in mind, we now explain why our review in this case falls at the deferential end of the spectrum. The difficulty facing the circuit court in the first trial-after it discovered a significant evidentiary issue regarding the three recordings-was that the first pretrial hearing the court held to purportedly address the requirements of WIS. STAT. § 908.08 failed to address any of the statutory standards regarding any of the three recordings. So far as the parties discuss the facts and the issues on appeal, this appears to have been the result of shared and unintentional failures by defense counsel, the prosecution, and the court. The court inadvertently got badly off track on a significant set of evidentiary issues involving the core evidence in the case, and neither side assisted the court in getting back on track before some of this evidence was presented to the jury. Fortunately, during the course of the first trial, the court recognized the problem and addressed it. Notably, in considering our standard of review, we see no suggestion that this shared failure arose from or was part of a tactic by the prosecution to deprive Rave of his opportunity for a single trial. Accordingly, we review the mistrial ruling with deference because, under these circumstances, the circuit court was "best able to assess the risk that a verdict may result from pressures inherent in the situation." See Seefeldt , 261 Wis. 2d 383, ¶26.
¶18 We now elaborate regarding events surrounding the court's decision to declare a mistrial. After the Z.J.C. recording was played for the jury, the court confirmed with the parties that the State had complied with a provision of WIS. STAT. § 908.08 requiring that the State file an offer of proof describing certain aspects of the video and the manner in which it was recorded. See § 908.08(2)(a). Upon further review of the statute, the court asked if the defense had objected to the admission of the recordings. Rave's counsel reminded the court that she had moved to suppress the recordings in their entirety (although, as summarized above, both defense counsel and the prosecution failed at the hearing to make a meaningful request for a ruling based on the statutory predicates).
¶19 The court then found the following:
that the [recording of Z.J.C.] was of a child before the child's 12th birthday. The recording was accurate and free from excision, alteration or audio distortion once that had been remedied. The child's statement was made upon the child's understanding that false statements are punishable and of the importance of telling the truth. That the time, content and circumstances of the statement provide an indicia of its trustworthiness, and the Court finds that the admission in this case did not in any way unfairly surprise or deprive the defense of their opportunity to meet the allegations made in the statements.
Therefore, the testimony of [Z.J.C.] as recorded in the audiovisual is admitted.
In response, Rave's attorney asked that the record reflect that these findings were made after the Z.J.C. recording had been played for the jury.
¶20 The court then asked the parties "why the correct procedure was not followed in requesting and requiring that [the WIS. STAT. § 908.08 ] hearing be conducted prior to the presentation [of the recording]?" Rave's counsel explained she had intended that the pretrial hearing be a hearing under the terms of § 908.08, but acknowledged that the court had ruled on the motion based instead on the nature of the potential expert testimony.
¶21 The following exchange then occurred:
THE COURT: Are you moving for a mistrial?
[RAVE'S COUNSEL]: Your Honor, at this point, I still feel that these videos can be explained to a certain extent to the jury. There's a lot of other things that weren't-that weren't done in this case, or-
THE COURT: My question is, under [§] 908.08, because the Court did not conduct a hearing on the statement's admissibility [of the recording played for the jury] or view these audiovisuals prior to trial, are you moving for a mistrial?
[RAVE'S COUNSEL]: No, Your Honor.
The court then dismissed the parties for the remainder of the lunch break.
¶22 After the break, but before the jury was called back, the court declared a mistrial. In announcing its decision, the court laid out in detail the predicate pretrial findings necessary under WIS. STAT . § 908.08(3), which we summarize above. The court indicated that it had not viewed the recordings, and in fact could not have done so because the recordings "were never tendered to the court." The court determined that it had not complied with § 908.08, that it would be "clear error [to] proceed[ ] with the trial," and that therefore a mistrial should be declared.
¶23 In the subsequent evidentiary hearing on WIS. STAT . § 908.08, the court further explained its mistrial decision. The court reiterated that it had not viewed the recordings in advance of the trial, and therefore never had a chance to determine whether they complied with § 908.08. The court expressed "great[ ] distress[ ] that both attorneys knew that I had not complied with the statute, that I hadn't been given an opportunity to comply with the statute, and nevertheless proceeded to try to put into evidence statements that would have, without [t]he [c]ourt's prior hearing, automatically result in a reversible error in an appeal."
¶24 We now explain why we conclude that the court rationally exercised its discretion in declaring a mistrial based on all of the circumstances.
¶25 Rave does not dispute that the playing of the recording at the first trial violated WIS. STAT . § 908.08 because the court failed to make any of the predicate findings based on a viewing of the recordings, as required for admissibility under § 908.08(3), such as the recording is accurate and free from excision, alteration and visual or audio distortion. Sec. 908.08(2)(b), (3)(b).
¶26 More to the point, the court was confronted at the first trial with the choice of either addressing, on the fly, whether the State's key evidence was admissible based on a clear statutory standard, or instead eliminating the problem altogether by declaring a mistrial and starting over fresh, after conducting a proper evidentiary hearing. In making this choice, the court knew that it faced the obligation to consider, with effective input from both sides, how to address the Z.J.C. recording, which had already been played, as well as the other two recordings that the court had never viewed.
¶27 Rave does not dispute the State's contentions that, the recordings, if admissible : were the key pieces of evidence against Rave; did not consist of tangential or cumulative substantive information; were the strongest evidence of Rave's guilt; and were the modes of proof that the State proposed to use for the jury to assess the demeanor and credibility of the incriminating statements of the children.
¶28 To comply with WIS. STAT . § 908.08, the court needed to account for the requirement that the court view the recordings with an eye for the pertinent findings needed for admissibility. Implied in the court's mistrial determination were findings that conducting a proper evidentiary hearing might not be quickly and easily accomplished, and also that rushing through such a hearing on short notice risked error and unfairness to either or both parties. For example, up to that point, the parties had provided the court with only brief oral arguments regarding a few of the § 908.08 predicates for admissibility. It was reasonable, under these unusual circumstances, for the court to determine that the amount of time necessary for the court and the parties to properly address the requirements of § 908.08 was too great to justify keeping the same jury throughout that process.
¶29 On the topic of timing, we see no reason not to defer to the court's discretionary determination that releasing the jury for the afternoon, beginning at approximately 1:40 p.m., so that the court could scrutinize the recordings, with proper input from the parties, would not have provided an adequate amount of time for the court to review the recordings, receive effective input from both sides, and make the appropriate findings. For example, the Z.J.C. recording alone was 71 minutes long.
¶30 We now address Rave's specific arguments regarding the court's declaration of a mistrial.
¶31 Rave's strongest argument presents a close question. Rave contends that the court failed to sufficiently consider alternatives to declaring the mistrial. We acknowledge that the court was quick to announce a mistrial, did not expressly list all alternatives, and rested its decision exclusively on the concept that it would be "clear error" for the court to proceed with the trial without considering the statutory predicates. However, for reasons we have explained, under the unusual circumstances, it is self-evident now, and should have been evident to the court and the parties at the time of the mistrial decision, that the court had to make a stark choice between just two alternatives. The court could either delay the trial for as long as it might take to resolve significant evidentiary issues, or declare a mistrial. Rave does not suggest, and we do not readily see, any curative instructions or any other reasonable alternatives that could have been available to the court, which distinguishes this case from many other potential mistrial scenarios. Further, Rave's alternative options argument appears to elevate what circuit courts are required to expressly state beyond what is required by law. Circuit courts do not fail to exercise sound discretion "simply because [they] failed to find 'manifest necessity' in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion ." See Arizona , 434 U.S. at 517 (emphasis added).
¶32 For reasons we have already explained, we reject Rave's related argument, made only with the benefit of hindsight, that the court should have excused the jury for the afternoon and had it return the next day after holding a proper WIS. STAT . § 908.08 hearing, in light of the fact that the court would later determine that all three recordings were admissible. In a similar vein, Rave apparently intends to argue that the court's determination that all of the recordings were admissible at the second trial illustrates that continuing with the first trial could not have prejudiced him. The argument would be that the ultimate admissibility of the recordings rendered the court's noncompliance with § 908.08 a harmless error, and therefore non-reversible. However, these arguments improperly assess the court's exercise of discretion with the benefit of hindsight. Under the appropriate standard of review, we assess whether the court appropriately exercised its discretion based on the circumstances presented, not in anticipation of future events that the court could not predict without first holding a proper § 908.08 hearing. See Industrial Roofing Servs., Inc. v. Marquardt , 2007 WI 19, ¶40, 299 Wis. 2d 81, 726 N.W.2d 898 ("[T]he standard of review is to determine whether the circuit court erroneously exercised its discretion" and "not to Monday-morning quarterback the decision with the advantage of 20/20 hindsight.").
¶33 Rave contends that the court's mistrial decision was "irrational" and "impulsive." We have already explained why this argument fails. It would have been preferable if the court had explained its reasoning more clearly and fully. However, the record supports a conclusion that the court acted rationally and not impulsively in deciding to declare a mistrial based on its inadvertent noncompliance with WIS. STAT . § 908.08 up to that point, due in part to failures by both sides.
¶34 Rave's second argument, ineffective assistance of counsel, is resolved based on our conclusion on his first argument. Assuming without deciding that his counsel performed deficiently, Rave fails to show how his counsel's performance prejudiced him. See State v. Pico , 2018 WI 66, ¶18, 382 Wis. 2d 273, 914 N.W.2d 95 (citing Strickland v. Washington , 466 U.S. 668, 686 (1984) ) (defendant denied effective assistance of counsel only when counsel performed deficiently and the deficiency prejudices defense). Rave does not argue that trial counsel was ineffective in any way other than failing to bring the motion to dismiss on double jeopardy grounds or that his ineffective assistance claim survives if his mistrial argument fails. Failure to file what would have been an unsuccessful motion could not have prejudiced Rave. Accordingly, we affirm the circuit court's decision to deny Rave's post-conviction motion based on his ineffective assistance of counsel claim. See Pico , 382 Wis. 2d 273, ¶20 ("To show prejudice ..., a defendant must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ") (quoted source omitted).
CONCLUSION
¶35 For all these reasons, we affirm the judgment of conviction and the order denying Rave's post-conviction motion challenging that judgment.
By the Court .-Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

U.S. Const . amend. V ; Wis. Const . art. 1, § 8 (1).

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The Hon. Thomas E. Lister presided over Rave's pretrial motion, the first and second trials, and a motion for a new trial that does not matter to this appeal. The case was then transferred to the Hon. Anna L. Becker, who presided over Rave's sentencing and ruled on his post-conviction motion.

The parties make no arguments regarding this second, dismissed count.

The State argues that Rave forfeited an appellate challenge to the mistrial declaration because he did not object to the declaration, but instead consented to it. See State v. Lettice , 221 Wis. 2d 69, 80-81, 585 N.W.2d 171 (1998) (Retrial after a mistrial of same charges requires "manifest necessity" where the initial "trial is terminated over defendant's objection and without his or her consent."). Although it is true that Rave did not explicitly object to the court's declaration of a mistrial, the record is ambiguous regarding Rave's position. We assume without deciding that Rave did not consent to a mistrial and that he has not forfeited his argument that there was not a manifest necessity calling for a mistrial.