STATE of Wisconsin, Plaintiff-Respondent,

v.

Chris JACOBS, III, Defendant-Appellant.†

Court of Appeals

*No. 94-0304-CR. Submitted on briefs May 2, 1994.—Decided June 28, 1994.*

(Also reported in 519 N.W.2d 746.)

†Petition to review denied.

220

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Randall E. Paulson,* assistant state public defender, and *Weldon Nelson,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

Before Cane, P.J., Wedemeyer and Myse, JJ.

CANE, P.J.   Chris Jacobs appeals a nonfinal order denying his motion to dismiss this case on double jeopardy grounds. Jacobs argues that all the factual issues the State raises in the present complaint have necessarily been resolved against it in a previous prosecution, and that relitigation of these factual issues would subject Jacobs to double jeopardy and is therefore barred. Because we conclude that the factual

issues raised here were not necessarily resolved against the State in the prior prosecution, we affirm.

In July 1987, Marathon County sheriff's deputies responded to a report of an "accident with injuries" at the Kunz family residence in the Town of Bern. The deputies found the bodies of Randy, Marie, Irene and Clarence Kunz, all recently killed by gunshot. A relative who also resided there, Kenneth Kunz, told the police that he had just found the bodies. Kenneth also informed the police that there was one other relative who resided there, Helen Kunz, and that she was missing. The remains of Helen's body were found in March 1988, approximately eighteen miles from the Kunz residence.

Police had taken plaster cast impressions of tire tracks and footprints from the area around the Kunz residence and their garden, located about a quarter of a mile from the house. In addition to the tire tracks, the police had found Randy Kunz' vehicle in the garden. Police investigation eventually focused on Jacobs. In January 1988, detectives sought out Jacobs' car to see whether its tires could have made the tracks found in the Kunz' garden. Shortly thereafter, police questioned Jacobs, and he was arrested for the first-degree murders of five members of the Kunz family. He was detained over the weekend, but then released uncharged.

Jacobs was arrested again at the end of August 1988, and this time was charged with five counts of first-degree murder. The complaint essentially alleged that tires, shell casings and other physical evidence seized from Jacobs were consistent with the evidence recovered from the bodies and found at the Kunz residence. After a lengthy trial, the jury returned not

guilty verdicts on all five homicide counts, including the homicide of Helen Kunz.

Jacobs is now being charged with the kidnapping and false imprisonment, both while armed with a dangerous weapon, of Helen Kunz. Jacobs moved the trial court for a dismissal, arguing the charges violate his rights against double jeopardy as provided in the Fifth Amendment to the United States Constitution and Art. I, § 8, of the Wisconsin Constitution.[1] The trial court dismissed Jacobs' motion, and this interlocutory appeal followed.[2]

Interpretation of the double jeopardy clause is an issue of law to be reviewed de novo. *State v. Turley,* 128 Wis. 2d 39, 47, 381 N.W.2d 309, 313 (1986). Further, whether a subsequent prosecution violates a defendant's right against double jeopardy is also a question of law that is to be reviewed de novo. *See State v. Thierfelder,* 174 Wis. 2d 213, 218, 495 N.W.2d 669, 672 (1993).

Jacobs first contends that the present charges are analogous to lesser included offenses of the charges for which Jacobs was already prosecuted and acquitted and are, as a result, barred. Jacobs argues that the abduction of Helen Kunz, although not charged, was litigated in the homicide trial by the State as a predicate to proving first-degree murder. However, *State v. Kurzawa,* 180 Wis. 2d 502, 509 N.W.2d 712 (1994), has

---

[1] The federal provision states "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The double jeopardy clause in our state constitution states in part: "no person for the same offense may be put twice in jeopardy of punishment . . . ."

[2] In an order dated February 4, 1994, we granted leave to appeal this nonfinal order.

clarified that the "same elements" test as established in *Blockburger v. United States,* 284 U.S. 299 (1932), is the standard by which double jeopardy is analyzed.

Under the same elements test, an offense is a lesser included one "only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the 'greater' offense." *State v. Kuntz,* 160 Wis. 2d 722, 754-55, 467 N.W.2d 531, 544 (1991). For an offense to constitute a lesser included offense "it must be 'utterly impossible' to commit the greater crime without committing the lesser." *Randolph v. State,* 83 Wis. 2d 630, 645, 266 N.W.2d 334, 341 (1978) (citation omitted). Because the elements of kidnapping and false imprisonment are completely different from the elements of first-degree murder,[3] it is possible to commit first-degree homicide without kidnapping and falsely imprisoning the victim. A person can be guilty of first-degree homicide without ever having any physical contact with the victim—a drive by shooting, for example.

Jacobs cites *Brown v. Ohio,* 432 U.S. 161 (1977), to support his theory that the kidnapping and false imprisonment charges are lesser included offenses to first-degree homicide. In *Brown,* the Court invalidated a felony auto theft prosecution following a joyriding prosecution, despite different statutory elements. *Brown* can be distinguished by applying the *Randolph* lesser included test: It is utterly impossible to commit the crime of joyriding without committing the crime of auto theft. Jacobs also cites *Harris v. Oklahoma,* 433 U.S. 682 (1977) (per curiam), where a prosecution for robbery was invalidated because the same robbery had

---

[3] *See* §§ 940.31(1)(b), 940.30 and 940.01, STATS., respectively.

224

been relied on as the predicate felony in a prior prosecution for felony murder. For *Harris* to apply, Jacobs would have had to have been prosecuted for felony murder, with kidnapping and false imprisonment as the underlying felonies. However, Jacobs was charged with the first-degree murder of Helen Kunz in the initial prosecution, and the State was not required to prove an underlying felony, let alone kidnapping and false imprisonment, as an element of the charged offense. Accordingly, Jacobs' lesser included offense argument fails.

Jacobs next contends that this prosecution is barred under a theory of collateral estoppel, also referred to as issue preclusion. The doctrine of collateral estoppel has been incorporated into the Fifth Amendment guarantee against double jeopardy and provides "that when a[n] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443 (1970). Jacobs argues that the State based its argument that Jacobs was involved in the murder of Helen Kunz on the tires seized from Jacobs that were consistent with the tire tracks found at the Kunz' garden; in other words, that Jacobs was involved in kidnapping Helen Kunz. Therefore, Jacobs argues, the jury in the first-degree homicide case necessarily found that he had not kidnapped or falsely imprisoned Helen when it acquitted him; accordingly, this "issue of ultimate fact has once been determined by a valid and final judgment . . . [and] cannot again be litigated . . . ." *Id.*

We must first determine "whether a rational jury could have grounded its verdict upon an issue other

than" Jacobs' involvement in the kidnapping and false imprisonment of Helen Kunz. *Id.* at 444. To do so, we "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter . . . ." *Id.* The burden is "on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States,* 493 U.S. 342, 350 (1990).

Upon reviewing the record, we conclude that a rational jury could have grounded its verdict upon an issue other than the abduction of Helen Kunz. Here, the jury could have simply found that the State failed to establish Jacobs actually killed any member of the Kunz family, or that he intended any actions he took would aid someone else in the murders. An example of an issue the jury could have based its acquittal on is illustrated by a question submitted by the jury. In the initial prosecution, the jury was instructed that they could convict Jacobs of the first-degree murder of Helen Kunz on one of two theories: To convict him as a direct actor, the jury had to find he intended to kill Helen and caused her death; or, to convict him of aiding and abetting her murder, it had to find he engaged in overt or verbal conduct that objectively aided another to murder her and that he consciously desired or intended that his conduct would yield such assistance. Under either theory, the jury had to find both a conduct element and a mental state element in order to convict Jacobs. A jury question submitted to the trial court indicates that the acquittal may very well have been based on their failure to find the mental state element.

Ten hours into the jury deliberations it submitted the following question: "Would like 'intent to kill' made clear. Can we separate 'Intent to murder [sic].' That is

can we separate Chris Jacobs' intentions from possible accomplice['s] or accomplices['] intention." The note was accompanied by page seven of the instructions given to the jury, with the following paragraph circled: "If a person intentionally aids and abets the commission of a crime, then that person is guilty of the crime as well as the person who directly commits it." The following agreed upon answer was then sent to the jury:

> Yes. You must look at the intention of the defendant. The person who directly commits a crime must have an intention to commit that crime. One who aids and abets must be found to have an intent to assist another in the commission of that crime before he can be found guilty.

One hour and fifteen minutes later, the jury returned with not guilty verdicts on all five murder counts. The question itself, combined with the fact that the jury deliberated ten hours before asking it and only one and one-quarter hours after receiving the answer, leads us to conclude that "a rational jury could have grounded its verdict upon an issue other than" whether Jacobs kidnapped and falsely imprisoned Helen Kunz—i.e., intent.

In light of this and other possibilities, Jacobs fails to demonstrate that the jury found he did not kidnap or falsely imprison Helen Kunz. Jacobs argues that because the jury acquitted Jacobs of aiding and abetting in the murder of Helen Kunz, it necessarily decided that Jacobs did not kidnap or falsely imprison her. However, as just discussed, the jury could have made its decision based on Jacobs' mental state instead of his conduct. Jacobs also presents affidavits of five of the jurors, all which state that they concluded that the

227

State had failed to establish that Jacobs had abducted or participated in the abduction of Helen Kunz. Assuming without deciding that these affidavits are admissible, these are affidavits of fewer than half of the jurors, and they were taken in uncontrolled circumstances three years after the not guilty verdicts were returned. These five affidavits, taken some time after the verdicts were rendered, are not sufficient to meet Jacobs' burden of demonstrating that the issues of Helen Kunz' kidnapping and false imprisonment were decided. Therefore, after reviewing the record, we are not persuaded that the jury decided the issues now at hand. Accordingly, we affirm the trial court's order.

*By the Court.*—Order affirmed.