# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2020AP2012-CR

† Petition for Review Filed

Complete Title of Case:

**STATE OF WISCONSIN,**

  **†PLAINTIFF-APPELLANT,**

    **V.**

**JAMES P. KILLIAN,**

  **DEFENDANT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | July 19, 2022 |
| Submitted on Briefs: | August 4, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Joshua L. Kaul*, attorney general, and *Scott E. Rosenow*, assistant attorney general. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Todd E. Schroeder* of *Belzer, Schroeder & Lough, S.C.*, La Crosse. |

COURT OF APPEALS
DECISION
DATED AND FILED

July 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2012-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CF163**

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

JAMES P. KILLIAN,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Trempealeau County: RIAN RADTKE, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 HRUZ, J. The State appeals an order dismissing all of its charges against James Killian. Before filing the charges at issue in this appeal, the State had previously charged and prosecuted Killian for one count of first-degree sexual assault of a child under the age of thirteen and one count of repeated sexual assault

of a child under the age of sixteen. Those charges stemmed from allegations that Killian had sexual contact with Britney in 2014 and had sexually abused his daughter Ashley over a ten-year period.[1] The circuit court in that prior case ultimately dismissed the previously filed charges with prejudice after it found that the prosecutor intentionally forced a mistrial to get "another 'kick at the cat,'" to charge Killian with more crimes, and to increase the likelihood of conviction.[2] Notably, the State did not appeal that decision, and it therefore cannot be, and is not, under review in this appeal.

¶2      Instead, over a year later, the State filed a new criminal complaint in this case charging Killian with three counts of first-degree sexual assault of a child, six counts of incest with a child, and one count of repeated sexual assault of the same child. Those charges were again based on allegations that, over many years, Killian had sexually abused Ashley (Counts 1-9) and had sexual contact with Britney multiple times (Count 10). The circuit court granted Killian's motion to dismiss, concluding that those charges would subject Killian to double jeopardy—and thus be unconstitutional—because the State had previously prosecuted him for those offenses.

¶3      The State argues that the present charges would not subject Killian to double jeopardy because they are either factually or legally different from the charges in the first prosecution. The State contends that the circuit court improperly

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we use pseudonyms to refer to the victims. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The Honorable Anna L. Becker presided over the State's first prosecution of Killian. The Honorable Rian Radtke presided over the charges now at issue in this appeal.

deviated from the **Blockburger** test[3] to determine whether Killian was being prosecuted for the same offenses as in the first prosecution.

¶4      We reject the State's arguments.  Our analysis requires us to consider the context of the first prosecution, wherein the State intentionally engaged in misconduct expressly to achieve the opportunity to file additional charges against Killian, including those in the instant case.  We conclude, in accordance with **State v. Schultz**, 2020 WI 24, 390 Wis. 2d 570, 939 N.W.2d 519, that the circuit court properly considered the entire record of the first prosecution to determine whether Killian was in jeopardy for the offenses now charged.  In reviewing that record, including the prosecutor's arguments and the evidence that had been presented during the trial, we agree with the circuit court in this case that Killian was, in fact, in jeopardy of being convicted of the offenses now charged.  In reaching this conclusion, we do not depart from the well-established **Blockburger** test to determine, for purposes of double jeopardy, whether Killian was previously prosecuted for the same offenses.  Rather, we first examine the scope of jeopardy in the first prosecution—pursuant to **Schultz** and cognizant of the prosecutor's misconduct in the first trial—before determining whether Killian was at risk of being found guilty for the offenses now charged.  Accordingly, we affirm the order dismissing the State's current charges against Killian.[4]

---

[3] *See **Blockburger v. United States***, 284 U.S. 299 (1932).

[4] Killian also argues that issue preclusion prohibits the State from prosecuting the current charges.  Because we conclude that the State's current charges are barred by the Double Jeopardy Clauses, we need not address Killian's additional arguments.  *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

**BACKGROUND**

¶5   On March 17, 2015, the State charged Killian in Trempealeau County case No. 2015CF47 with one count of first-degree sexual assault of a child under twelve years old.  The complaint alleged that "on or about Monday, August 18, 2014," Killian lay down beside Britney in bed "and grabbed her buttocks."  The complaint further alleged Britney, who was ten years old at the time of the assault, had reported in a forensic interview that Killian "squeezed her butt on five different occasions," that Killian had "touched her 'boobies' underneath her clothes" once in 2014, and that Killian had "had rubbed her belly area all over and under her clothes when she [was] lying in bed with him."  An amended Information was later filed, amending the charge to first-degree sexual assault of a child under thirteen years old, pursuant to WIS. STAT. § 948.02(1)(e).

¶6   On March 15, 2016, the State filed a new criminal complaint (Trempealeau County case No. 2016CF38), charging Killian with one count of repeated sexual assault of child under sixteen years old, pursuant to WIS. STAT. § 948.025(1).  The complaint alleged that Killian committed three or more violations of WIS. STAT. § 948.02(1) or (2) involving Ashley from "April 1994 through December 1999."  The complaint's probable cause statement further alleged that Ashley, who was born in 1982, had reported that Killian sexually assaulted her "starting at the age of six and ending at 17 years of age," which Ashley stated "would have started in about January 1988 and ended about December 1999."  The assaults occurred "every day for several years" and ranged from Killian touching Ashley's vagina to Killian having sexual intercourse with her.

¶7   At an October 2016 hearing in case No. 2015CF47 involving Britney, the circuit court granted the State's motion to introduce other-acts evidence at trial

4

regarding Killian's sexual assaults against Ashley "between January 1988 and December 1999." The prosecutor did "not object," however, to Killian's motion to exclude any additional other-acts evidence, such as other sexual assaults not involving Ashley. The prosecutor acknowledged that he intended to introduce evidence of Killian's "grooming behavior" toward Britney, but the prosecutor did not believe such evidence constituted other-acts evidence. The prosecutor described the grooming behavior as Killian asking Britney "if he could be her boyfriend"; "[b]uying her gifts"; and "[n]ormalizing the behavior of sleeping with her in the bed together." The court agreed with the prosecutor that evidence of grooming behavior would not constitute other-acts evidence and that the State could introduce that evidence at trial. With that noted, the court granted Killian's motion to exclude any additional other-acts evidence—aside from the other-acts evidence related to Ashley—because the prosecutor had not objected. The following month, the court joined the two cases pursuant to the parties' stipulation.

¶8      Two business days before Killian's jury trial, the State filed a motion seeking leave to file an amended Information. The State wanted to assert a new count of incest pursuant to WIS. STAT. § 948.06(1), alleging that Killian had sexual intercourse with Ashley sometime between April 1994 and December 1999. The State also sought to increase the date range of the allegations involving Britney from what was then "on or about … August 18, 2014," to sometime "on or between January, 2014 [and] August 18, 2014."

¶9      On the morning of June 19, 2017—the first day of Killian's jury trial—the circuit court addressed the State's proposed amended Information. The court denied the State's request to add the incest count, stating: "[I]t's extremely prejudicial to be just figuring out the dates the morning of trial. I mean, this was

5

charged in 2015. The offenses were back in 1994 through '98 here. And now we're just figuring out on the eve of trial what we want to charge."

¶10 The circuit court also addressed the State's proposal to expand the date range for the count related to Britney. Killian's defense counsel expressed concern that the prosecutor was attempting to "expand the date range in the hopes that it would make admissible evidence of other allegations that have not been charged." Defense counsel acknowledged that "[t]here have been, in the discovery, references to other potential allegations of sexual contact but they weren't charged." In responding to defense counsel's concerns, the prosecutor argued, in part, that "if more acts are disclosed at trial, the Information could be changed." The prosecutor then reiterated that argument, stating that "[i]f more facts are introduced at trial, the [c]ourt can amend the Information and give that instruction to the jury."

¶11 The circuit court responded to the prosecutor's comments, stating: "Well, it sounds to me like that's not the intent of your motion to add things because we've clearly had motions." The prosecutor confirmed, "That is not the intent. I just want an abundance of caution. I want to be clear that that's possible." The court allowed the State to expand the date range for the count involving Britney, acknowledging that Britney "was a younger-aged child" at the time of the alleged offense. The court, however, reaffirmed its prior ruling that the State could not introduce other alleged instances of sexual contact beyond the act that formed the basis of the original charge—i.e., the grabbing of Britney's buttocks—and the other-acts evidence related to Ashley.

¶12 After the jury was empaneled, the prosecutor gave his opening statement. While discussing the allegations involving Britney, the prosecutor stated that Britney "told her mother that the defendant was touching her inappropriately."

The prosecutor described instances where Killian took Britany for rides on a four-wheeler, during which they would sometimes "talk about sex and, in fact, he would rub himself on her." The prosecutor further stated that

> you're going to hear … that she then is confronted several times by behavior that is inappropriate and illegal. That he … was motivated by sexual gratification. I think the evidence is clear there was no other reason for him to be having those conversations and to be touching her.

The prosecutor also described instances where Killian was lying in bed with Britney and "was rubbing himself on her. And by himself, I mean his penis. Erect. Rubbing on her. All of these things form a course of conduct which I think is unmistakable. It's an unmistakable course of conduct that leads one to have no doubt that it was sexually motivated."

¶13 The prosecutor then discussed the sexual assault allegations involving Ashley, stating that Ashley had told Britney's mother and others that "her father started molesting her at about 6 or 7 years old and didn't stop until she was about 17. So approximately 10 years. And when you hear from [Ashley], what you're going to hear is a horrible story of long term abuse by one's father." The prosecutor informed the jury that Ashley will "go into detail about [the abuse]"—details "about hand jobs," "about oral sex," "about sexual intercourse," and "about him ejaculating on her stomach."

¶14 Four witnesses testified before the circuit court declared a mistrial: Britney's mother, Britney's grandmother, an employee of the Family and Children's Center in La Crosse, and Britney. Prior to Britney's testimony, the prosecutor identified several preliminary issues that he wanted the court to address. In the course of advancing those issues, the prosecutor began arguing that other-acts evidence of Killian touching Britney should be admissible because the complaint

alleged a "course of conduct." The prosecutor further asserted that Britney would testify as to "what happened to her" and that those "things" are not "other acts" covered by the court's ruling in October 2016. The prosecutor later clarified that "other acts," in his view, did not include "a breast rub," "alleged humping," "penis rubbing on her leg," "a vagina rub," or "a butt rub." The prosecutor acknowledged that it "could have charged each touch but [it] charged one over a course of time."

¶15     After further discussion, the prosecutor said that "[a]nything could happen when [Britney] testifies.… [I]f she starts to speak about a vagina rub or him rubbing his penis on her leg, I can't control that. And if she does that, then I guess [Killian's counsel is] going to move for a mistrial." The prosecutor later offered, however, to "talk to [Britney] and make sure she understands we're going to talk about the butt grab." The circuit court approved of the prosecutor's plan, stating: "Just make sure she listens to your questions. And ask direct questions. Not just wide open. She's a kid. She needs some help."[5] The court then dismissed the parties for lunch.

¶16     After lunch, the prosecutor again asked the circuit court to reconsider its prior ruling prohibiting evidence of other instances where Killian had sexual contact with Britney. The court recognized that it did not "disagree with the general premise that [the State is] bringing up today. But now we're at trial and defense is basically blindsided. Because back then, the [S]tate did not object." Following further argument, the prosecutor again alluded to the possibility of a mistrial, candidly stating:

---

[5] The circuit court later made a factual finding that the prosecutor's promised conversation with Britney to "make sure she understands we're going to talk about the butt grab" never happened, insomuch as he "posed an open[-]ended question in a context where it was clear that she was not focused on the proper timeframe relevant to the charged conduct."

8

> I think if the defense moves for mistrial, it will be a—there are one of two outcomes. One is they show that we have prosecutorially overreached which I hope we have not. I don't think we have. In which case we could not refile. But if they can't prove that, it's my opinion we could refile.

The court denied the prosecutor's request to reconsider its earlier ruling and concluded that the State could go into "grooming type activities but not other sexual assaults [involving Britney] because those should have been properly dealt with when we talked about the motions that were filed for other acts."

¶17    The trial proceeded with Britney's testimony. Britney, then thirteen years old, testified about her interactions with Killian, including conversations about sex, parts of the male and female bodies, condoms, and about Killian asking her if she wanted to touch his "private part." Britney further testified that she thought she told her mom "everything" on a spring day after Killian had offered to show her "the special spot where women like to be touched." The prosecutor asked Britney if she told her mom "something else relating to a private part of your body?" Britney then responded:

> When I told her that one day when we were in bed he was rubbing my back and he rubbed—he was rubbing my stomach. So he rubbed up and he rubbed on my breasts. And then when he was done, he rubbed on my private spot. It was just a swift rub.

¶18    Killian's counsel immediately objected and moved for a mistrial, arguing that Britney's answer had referenced "other acts that did not occur on the same night as the charged offense," in violation of the circuit court's ruling regarding other-acts evidence. The court agreed with Killian's counsel and declared a mistrial. The court concluded that "there's no alternative but a mistrial" because the testimony went "to the heart of the case" and it was not "something that could be fixed with either a curative instruction or asking [the jury] to strike and

disregard." After further discussion with the parties about whether the charges should be dismissed with prejudice, the court found no intentional prosecutorial misconduct and ruled that the State could retry the case.

¶19 In October 2017, before the State had sought to retry the case, Killian filed a motion to dismiss the extant charges because the mistrial had been caused by "prosecutorial overreaching" and any retrial would violate the Double Jeopardy Clauses of the United States Constitution and Wisconsin Constitution. *See* U.S. CONST. amend. V; WIS. CONST. art. I, § 8. The circuit court held an evidentiary hearing on Killian's motion and heard testimony from Killian's attorneys and the prosecutor.

¶20 The circuit court later issued a written order in March 2018 granting Killian's motion to dismiss and barring the State from retrying the case pursuant to ***State v. Jaimes***, 2006 WI App 93, 292 Wis. 2d 656, 715 N.W.2d 669. The court made express findings that the prosecutor believed one of two things would happen if he introduced the other-acts evidence: (1) Killian would not object, which would allow the jury to consider the previously barred evidence; or (2) Killian would object and move for a mistrial, which would allow the State to retry the case, add charges, better prepare for the prosecution, and increase the chance of conviction. The court further explained:

> The [c]ourt finds that the prosecutor's actions were intentional and the record shows that he knew his actions would be prejudicial to the defendant. The [c]ourt finds also that the prosecutor's conduct was designed to create another chance to convict, and was an act done so as to allow the State another "kick at the cat"—a chance to prepare more thoroughly and with a better understanding of the issues, a chance to file different motions and obtain more favorable pretrial rulings, and a chance to add more charges and

incriminating evidence into the record in the hopes of solidifying the State's chances of conviction.[6]

The State did not appeal the court's ruling.

¶21 Much later, in October 2019, the State filed a new criminal complaint and Information charging Killian with ten offenses: three counts of first-degree sexual assault of a child pursuant to WIS. STAT. § 948.02(1) (1991-92), (Counts 1, 2 and 4); six counts of incest with a child pursuant to WIS. STAT. § 948.06(1) (1995-96), (Count 3 and Counts 5-9); and one count of repeated sexual assault of the same child pursuant to WIS. STAT. § 948.025(1)(d) (2011-12), (Count 10).[7] The first nine counts involved allegations that Killian had sexual contact and sexual intercourse with his daughter, Ashley. Each count was confined to approximately a two-year period, starting as early as around 1990 and ending as late as around 1997. The tenth and final count involved allegations that Killian had touched Britney's breast and pubic mound and had pressed his erect penis against her body. The complaint alleged that those events occurred "in or around June 2012, and no later than August 17, 2014."

¶22 Killian filed a motion to dismiss the new charges, arguing, among other things, that the new charges were barred on double jeopardy grounds. After both parties submitted briefs on the motion, the circuit court issued an oral ruling.

---

[6] We summarize and quote only some of the circuit court's comments and rationale justifying its conclusion that the State had engaged in intentional prosecutorial overreach such that it would be barred from retrying Killian in this matter. Suffice it to say, the court provided extensive and pointed findings in this regard. However, because not all of these findings and the court's rationale are directly relevant to the legal question before this court regarding double jeopardy, we do not expound upon them any further.

[7] For simplicity, we cite only the most recent version of the statutes referenced in the criminal complaint for Counts 1-9. The parties have not identified any changes to the statutory language during the years at issue that would affect our analysis here.

The court recognized that it must apply the *Blockburger* test to determine whether the second prosecution was barred, and that it could "examine the entire record of the first proceeding to determine the actual scope of jeopardy in the first proceeding." After comparing the prior complaints with the current complaint, after considering the evidence both presented and sought to be presented at the first trial, and after considering the circuit court's factual findings in the first case, the court granted Killian's motion to dismiss. The court noted that the prosecutor's plan in the first prosecution "was to bring all of the alleged acts into trial and then seek to amend the Information after testimony to conform to the evidence." The court then concluded that the new charges "fall within the parameters of the offense[s] for which [Killian] was actually in jeopardy during the first proceeding upon review of the record." The State now appeals.

## DISCUSSION

¶23    The Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution guarantee the right to be free from double jeopardy. *State v. Steinhardt*, 2017 WI 62, ¶13, 375 Wis. 2d 712, 896 N.W.2d 700. Among other protections, the Double Jeopardy Clause protects a criminal defendant from repeated prosecution for the same offense. *State v. Lettice*, 221 Wis. 2d 69, 79, 585 N.W.2d 171 (Ct. App. 1998) (citing *United States v. Dinitz*, 424 U.S. 600, 606 (1976)). Whether a subsequent prosecution violates a defendant's rights against double jeopardy is a question of law that we review de novo. *State v. Jacobs*, 186 Wis. 2d 219, 223, 519 N.W.2d 746 (Ct. App. 1994).

¶24    The Double Jeopardy Clause does not provide absolute protection against criminal retrial by the government. *Lettice*, 221 Wis. 2d at 79-80. The government is generally not barred from retrying the defendant when the first trial

is terminated upon the defendant's own motion. *Id.* at 80. There is a narrow exception to that general rule, however, where a prosecutor's actions giving rise to the defendant's motion for mistrial were done "in order to goad the [defendant] into requesting a mistrial." *Id.* at 81 (alteration in original) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982)). Under such circumstances, a defendant may invoke double jeopardy protections if the prosecutor acted "with the intent to subvert the defendant's double jeopardy protections, *i.e.*, to gain another chance to convict or to harass the defendant with multiple prosecutions." *State v. Quinn*, 169 Wis. 2d 620, 625, 486 N.W.2d 542 (Ct. App. 1992). This narrow exception protects the defendant's "valued right" under the Double Jeopardy Clause to complete his or her trial before the first tribunal. *See Kennedy*, 456 U.S. at 671-73.

¶25 During Killian's first prosecution, the circuit court found that the prosecutor's conduct "was designed to create another chance to convict" and "to add more charges and incriminating evidence into the record in the hopes of solidifying the State's chances of conviction." This conduct occurred after jeopardy had attached upon the jury being impaneled and sworn. *See Crist v. Bretz*, 437 U.S. 28, 38 (1978); *see also* WIS. STAT. § 972.07(2). The court then concluded that the State could not retry Killian for the charged offenses. The State never appealed that decision, and it is not at issue in this appeal. Instead, in this appeal, we must determine whether the current prosecution of Killian places him in jeopardy for the same offenses for which he was being prosecuted in the earlier case.

¶26 Where, as here, the State has filed new charges after earlier charges were dismissed with prejudice, we employ the *Blockburger* test to determine whether the new charges involve the same offenses at issue in the earlier prosecution. *See State v. Davison*, 2003 WI 89, ¶24 n.11, 263 Wis. 2d 145, 666 N.W.2d 1. Under the *Blockburger* test, two prosecutions are for the "same offense,"

in violation of the Double Jeopardy Clause, when the offenses in both prosecutions are "identical in the law and in fact." *State v. Schultz*, 2020 WI 24, ¶22, 390 Wis. 2d 570, 939 N.W.2d 519 (citation omitted). Offenses are not identical in law if each requires proof of an element that the other does not. *Id.* Offenses are not identical in fact when a conviction for each offense requires proof of an additional fact that convictions for the other offenses do not. *Id.* Offenses are also not identical in fact if they are different in nature or separated in time. *Id.*

¶27 These foregoing, general principles are well established, and the parties largely do not dispute them on appeal. Rather, the key question here is how to properly identify the offenses for which Killian *was* in jeopardy of being convicted during his first case. In other words, absent the mistrial caused by prosecutorial overreach, could Killian have been convicted in the prior case on all of the offenses at issue in the present case? The State argues that the circuit court did not properly apply the *Blockburger* test when it looked beyond the pleadings and considered the parties' arguments and evidence presented at trial. The State insists that the court should have stopped its analysis after concluding that a strict comparison of the pleadings in the first case against those in this case would pass the *Blockburger* test.

¶28 We reject the State's arguments. Regardless of whether the first prosecution results in an acquittal, a conviction, or the dismissal of charges with prejudice after a mistrial, we review the record of the first prosecution in its entirety to determine the scope of jeopardy—i.e., the defendant's exposure to the risk of determination of guilt. *See Schultz*, 390 Wis. 2d 570, ¶32; *State v. Williams*, 2004 WI App 56, ¶23, 270 Wis. 2d 761, 677 N.W.2d 691 ("'Jeopardy' means exposure to the risk of determination of guilt."). Thus, our review is not limited to the

charging documents—we may also consider the parties' arguments and evidence at trial. *See Schultz*, 390 Wis. 2d 570, ¶¶32, 55.

¶29     For reasons further explained below, we conclude, as did the circuit court, that by virtue of the prosecution in the first case alleging and placing into evidence—or it expressly intending to do so—facts regarding conduct that is now the subject of the present case, the State subjected Killian to jeopardy on the charges in the present case. This result remains the same even if, at the time of the mistrial, the facts as alleged in the first case may not have encompassed all of the charges in the present case. We cannot ignore the circuit court's findings in the first case— which were never appealed and which the State never argues were clearly erroneous or contrary to law—that the prosecution's misconduct intended to obtain a mistrial so as to then add the additional charges in a subsequent prosecution. Allowing a retrial here disregards the protection required of a defendant's "valued right" under the Double Jeopardy Clause to complete his or her trial before the first tribunal. *See Kennedy*, 456 U.S. at 671-73.

## I.  Charge involving offenses against Britney

¶30     The State contends that Killian is not subjected to double jeopardy on Count 10, which is based on Killian's repeated sexual assault of Britney. The State does not argue that Count 10 is different in law from the earlier charge related to Britney. In addition, the State acknowledges that the offenses involving Britney "are not separated in time" from the offense previously charged. The State argues, however, that the allegations in Count 10 are factually different from those previously charged because the current allegations differ in nature.

¶31    The State contends that *State v. Ziegler*, 2012 WI 73, 342 Wis. 2d 256, 816 N.W.2d 238, is "highly instructive."  In that case, our supreme court concluded that

> [t]he five alleged acts—fellatio, digital penetration of [the victim's] vagina, the touching of [the victim's] breasts, the touching of [the defendant's] penis, and the striking of [the victim's] buttocks—are significantly different in nature, involving different methods of intrusion and contact and different areas of [the defendant's] and [the victim's] bodies.

*Id.*, ¶73.  The State argues that the current allegations—that Killian had touched Britney's breast and pubic mound and had pressed his erect penis against her body—are significantly different in nature than the allegation in the first prosecution—that Killian had grabbed Britney's buttocks.

¶32    The current charges involving Britney are indeed different in nature from the allegation that Killian had touched Britney's buttocks, but our analysis does not end there.  As Killian aptly observes, *Ziegler* is not instructive because it involved a double jeopardy claim that the charges were multiplicitous.  *See id.*, ¶58.  In contrast, Killian's double jeopardy claim is based on the State's successive prosecution of him after it improperly caused a mistrial with the intent to add new charges regarding Britney.  In other words, Killian does not dispute that the State could have charged him in one prosecution with all of the allegations in both the first complaint and the new complaint; rather, he contends that the scope of jeopardy in the earlier prosecution included the current allegations.

¶33    Before continuing our double jeopardy analysis for the charges involving Britney, we must address the State's alternative theory for prevailing.  Namely, the State contends that Killian should be judicially estopped from arguing that he was prosecuted in the prior case for touching Britney's breast and pubic

16

mound and for pressing his erect penis against her body. The State insists that such an argument would be inconsistent with Killian's earlier argument to the circuit court in the first case that the charge for which he was being prosecuted at trial was limited to Killian touching Britney's buttocks.

¶34    "Judicial estoppel is an equitable doctrine invoked at the court's discretion to preclude a party from abusing the court system." *State v. Harrison*, 2020 WI 35, ¶26, 391 Wis. 2d 161, 942 N.W.2d 310 (citation omitted). "The doctrine precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position." *State v. Ryan*, 2012 WI 16, ¶32, 338 Wis. 2d 695, 809 N.W.2d 37 (citation omitted). To invoke judicial estoppel, the following three elements must be satisfied: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Id.*, ¶33.

¶35    Given the State's prior misconduct, our invocation of the doctrine of judicial estoppel to preclude Killian's double jeopardy argument would be inappropriate. Killian does not assert a "clearly inconsistent" position on appeal from his earlier position in the first case. In the first case, Killian argued that other-acts evidence of Killian having sexual contact with Britney should not be admissible because the circuit court had previously ruled such evidence as being inadmissible, Killian's counsel had not prepared for that evidence, and the evidence could give rise to duplicity concerns. Conversely, Killian now argues that he was in jeopardy of being convicted based on those other acts because the prosecutor discussed other acts in his opening statement, the prosecutor elicited testimony from Britney regarding other acts, and, critically, the prosecutor intended to amend the charges to

conform to the evidence. Killian's two sets of arguments are therefore not "clearly inconsistent."

¶36 In addition, Killian's prior and current arguments each involve different factual circumstances. At the time Killian argued that the State should not be permitted to introduce certain other-acts evidence and the circuit court adopted and reaffirmed that position, the State had not yet introduced during trial any other-acts evidence of Killian having sexual contact with Britney. That fact undoubtedly changed when the prosecutor elicited testimony from Britney that Killian had touched her breast and "private spot"—which Britney had previously indicated meant her vagina. Because the State elicited that testimony, Killian ultimately was *not* successful in limiting the evidence to his touching of Britney's buttocks in the first prosecution. Thus, the factual circumstances have changed since Killian first argued against admitting other-acts evidence of him touching Britney, and they did so through no fault of his own.

¶37 Put another way, Killian is not playing "fast and loose with the courts" here by asserting inconsistent positions. *See **State v. Petty***, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996) (citation omitted). Killian's position only evolved after the prosecutor intentionally sought to subvert Killian's double jeopardy protections by violating the circuit court's ruling on other-acts evidence. Accordingly, it would not be equitable to judicially estop Killian's arguments here.

¶38 In the alternative, and returning to the merits of our double jeopardy analysis, the State argues that the scope of jeopardy in the first prosecution did not include the other-acts evidence that the prosecutor elicited in violation of the circuit court's order. The State further contends that it did not prosecute Killian in the first case for anything other than his touching of Britney's buttocks. Citing ***United States***

*v. Felix*, 503 U.S. 378 (1992), the State argues that a defendant "is not in jeopardy for conduct mentioned in other-acts evidence."

¶39     The State's arguments are untenable in the context of this case. As discussed above, in ascertaining whether Killian's rights against double jeopardy have been violated by this second prosecution, we must examine the entire record of the first prosecution to determine the scope of jeopardy, including "all of the evidence, testimony, and arguments of the parties." *See Schultz*, 390 Wis. 2d 570, ¶¶32, 55.   In other words, our review is not limited to simply comparing the pleadings filed in each prosecution.   *See id.*

¶40     The record of the first prosecution demonstrates that Killian was in jeopardy of being convicted for touching Britney's breast, for touching her pubic mound, and for pressing his erect penis on her body.  The criminal complaint in the first prosecution alleged that Killian had "sexual contact" with Britney, and it further alleged instances where Killian had grabbed Britney's buttocks and touched her "boobies."   Shortly before voir dire, the prosecutor obtained the circuit court's permission to increase the alleged period of the offense to that of between January 2014 and August 18, 2014.

¶41     Then, despite the circuit court's pretrial ruling to exclude other-acts evidence that constituted additional alleged acts of sexual assault against Britney, the prosecutor nonetheless discussed multiple acts of sexual assault in his opening statement to the jury.  The prosecutor said that Britney reported to her mom that Killian "was touching her inappropriately."  The prosecutor also informed the jury that they were "going to hear … that [Britney] then is confronted *several times* by behavior that is inappropriate and *illegal*."   (Emphasis added.)   The prosecutor further described an instance where Killian rubbed his erect penis on Britney while

they were in bed. Notably, the prosecutor never discussed in his opening statement that Killian had touched Britney's buttocks—that is, the alleged crime for which Killian was actually charged.

¶42   Later during the trial, and outside the presence of the jury, the prosecutor asked to introduce evidence related to additional instances of sexual contact that Killian had with Britney. The prosecutor argued that Killian's "course of conduct" was "on trial," which the prosecutor said included "a breast rub," "alleged humping," "penis rubbing on her leg," "a vagina rub," and "a butt rub." When the circuit court asked the prosecutor what action was charged, the prosecutor responded, "I figured you could take your pick. It's either the touching the breast or the butt rub." Although the court reaffirmed its pretrial ruling prohibiting evidence of additional acts of sexual contact, the prosecutor later elicited testimony from Britney that Killian had rubbed her breasts and her vagina. Accordingly, the jury learned, either in the prosecutor's opening statement or through Britney's testimony, about each act now alleged in the current Information.

¶43   The State's argument on appeal also ignores the reality of what occurred in the first case. In particular, if Killian had not moved for a mistrial, the prosecutor could have requested to amend the Information under WIS. STAT. § 971.29(2) to include additional charges.[8] Importantly, such a risk was not merely an unlikely hypothetical. Rather, the prosecutor had repeatedly referenced the

---

[8] WISCONSIN STAT. § 971.29(2) provides:

> At the trial, the court may allow amendment of the complaint, indictment or [I]nformation to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.

20

possibility of amending the Information to add new charges based on Britney's testimony.

¶44    The prosecutor stated before trial:

> Interestingly, it appears to me that if more acts are disclosed at trial, the Information could be changed. And it could, in fact, I think naturally prejudice the defendant more. But I don't think that's unusual. It happens at trial that more facts are accused and Informations are changed and juries deliberate on multiple issues.

The prosecutor further stated that "[i]f more facts are introduced at trial, the [c]ourt can amend the Information and give that instruction to the jury." The circuit court clarified that "that's not the intent of your motion to add things because we've clearly had motions." The prosecutor responded, "That is not the intent. I just want an abundance of caution. *I want to be clear that that's possible*." (Emphasis added.) Again at trial, the prosecutor alluded to the possibility of amending the Information, stating that "if [Britney] were to testify and she goes and tells her story, Mr. Killian is facing more charges." The prosecutor also said, "I think it would be the defendant's wors[t-]case scenario that we file an amended Information charging more assaults."

¶45    Had Killian not objected or requested a mistrial, the prosecutor was poised to elicit additional testimony regarding Killian rubbing his penis against Britney's body—as mentioned in the prosecutor's opening statement—and the prosecutor seemed intent to seek amendment of the Information to include each act supported by the evidence—as he repeatedly argued. Although the record is limited due to the trial ending early, those limitations occurred only as a result of the State's egregious and intentional misconduct, as found by the circuit court. Despite its limitations, the record of the first prosecution sufficiently demonstrates that Killian

21

was exposed to the risk of being convicted of first-degree sexual assault for touching Britney's breast, for touching her pubic mound, and for rubbing his penis against her body. Again, the prosecutor told the jury it would hear testimony that Killian illegally touched Britney multiple times and rubbed his erect penis on her, Britney then testified regarding two of the acts now charged, and the prosecutor repeatedly discussed amending the Information to include additional charges.

¶46     The State's reliance on *Felix* in support of its argument that the scope of jeopardy in the first prosecution did not include the other-acts evidence is misplaced. In *Felix*, the defendant was prosecuted in Oklahoma federal court for drug-related conduct that had previously been introduced as other-acts evidence in a Missouri federal court case. *Felix*, 503 U.S. at 381-82. In determining whether the defendant had been previously prosecuted for that conduct for purposes of double jeopardy, the Supreme Court recognized that "the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct." *Id.* at 387. The Court therefore rejected the defendant's double jeopardy claim, holding that "the Government did not in any way *prosecute* [the defendant] for the Oklahoma methamphetamine transactions [in the Missouri trial]; it simply introduced those transactions as prior acts evidence under Rule 404(b) [of the Federal Rules of Evidence]." *Felix*, 503 U.S. at 387.

¶47     Unlike *Felix*, where the government "simply introduced" the other-acts evidence at trial, the State actively prosecuted Killian in the first case for the acts currently charged. In the first case, the prosecutor asked the circuit court numerous times to admit evidence of those acts, the prosecutor informed the jury that there would be evidence of multiple illegal touches, Britney testified regarding two of the acts now charged, and the prosecutor repeatedly discussed amending the Information at the end of trial to include additional charges. The record

demonstrates that the other-acts evidence effectively, and intentionally, became part of the State's case, and Killian was at risk of being convicted for those offenses. *Felix* does not address a situation, such as here, where the State frequently discussed amending the Information to include charges based on the other-acts evidence and then intentionally violated a court's evidentiary ruling by introducing evidence of those other acts deemed inadmissible by the court.

¶48     In sum, the record demonstrates that Killian was in jeopardy of being convicted in the first prosecution for each of the offenses involving Britney that are now alleged as part of Count 10.  Count 10 is therefore—under the ***Blockburger*** test—identical in law and in fact to the offenses for which Killian was put in jeopardy in the first prosecution.  Accordingly, the circuit court properly dismissed Count 10 for being prosecuted in violation of Killian's constitutional rights against double jeopardy.

**II.  Charges involving offenses against Ashley**

¶49     The State next argues that the current charges related to Ashley are "factually or legally" different from the charge in the first prosecution related to Ashley.  The State asserts that Counts 1 through 5 are factually different because they are alleged to have occurred between 1990 and 1993, which is earlier than the 1994 to 1998 time period alleged in the first prosecution.  The State further contends that the counts alleging incest (Count 3 and Counts 5-9) are legally different from the original charge of repeated sexual assault of a child.  The State argues that incest requires proof that Killian "had sexual contact or intercourse with a child he knew was related to him in a degree of kinship closer than second cousin."  It further argues that repeated sexual assault of a child, on the other hand, requires proof that the child is under the age of sixteen.

23

¶50     The State's arguments again consider only the charging documents and therefore fail to consider the entire record. This includes, in particular, the circuit court's findings that the prosecutor intended to bring additional charges against Killian involving Ashley upon there being a mistrial in the first case. When looking at the pleadings alone, the State is correct that Counts 1 through 9 are either factually or legally different from the earlier charge related to Ashley. But again, the scope of jeopardy is not limited to the charges in the pleadings. *See Schultz*, 390 Wis. 2d 570, ¶¶32, 55.

¶51     The record as a whole demonstrates that Killian was in jeopardy in the first prosecution for the offenses now charged involving Ashley. Importantly, the criminal complaint in the first prosecution included allegations that Killian had sexually abused Ashley from about January 1988 to December 1999. The complaint alleged that, over that time period, Killian had touched Ashley's breasts, digitally penetrated and licked her vagina, forced Ashley to perform oral sex and "give him a 'hand job'" on multiple occasions, and forced Ashley to have sexual intercourse with him.

¶52     Before trial, the circuit court granted the State's motion to admit other-acts evidence related to Killian's sexual assaults of Ashley "between January 1988 and December 1999," which would have allowed Ashley to testify about all of Killian's acts of sexual abuse. Then, at trial, similar to what occurred with respect to Britney, the prosecutor informed the jury during his opening statement that they would hear "a horrible story of long term abuse by one's father" and that Ashley told Britney's mother and others that "her father started molesting her at about 6 or 7 years old and didn't stop until she was about 17."

24

¶53    The trial in these consolidated cases ended via a prosecutor-induced mistrial before Ashley could testify, but everything in the record demonstrates that Ashley would have testified regarding Killian's sexual abuse of her between 1988 and 1999.[9]  Again, the circuit court had deemed such other-acts evidence admissible in support of the charge involving Britney.[10]

¶54    And, again, the record also demonstrates that the State would have asked the circuit court to amend the Information to include at least one incest charge. Immediately before trial, the prosecutor had asked the court to amend the Information to include a charge of incest that allegedly occurred between April 1994 and December 1999.  The court ultimately denied the State's request to amend the Information, but the prosecutor told the court "maybe the proof at the trial will be sufficient to convince the [c]ourt that more sexual intercourse occurred which would be a basis for this charge."  Although some of the current offenses charged are alleged to have occurred before 1994—which is earlier than the charge and proposed amendment in the first prosecution—the State was prepared and permitted to present testimony of all of Killian's sexual assaults against Ashley between 1988 and 1999.  Because the record establishes the prosecutor's intention to seek to amend the charges to conform to the evidence or to add such charges upon a mistrial being declared, Killian was in jeopardy of being convicted of incest offenses and for offenses that occurred before 1994.

---

[9] Indeed, before the mistrial was declared, Britney's mother had testified on cross-examination about a Facebook Messenger conversation in which Ashley told Britney's mother, "[E]ver since I can remember until I was 17, [Killian] touched me in every way possible and had intercourse with me …."

[10] Although the circuit court's decision to admit other-acts evidence of Killian's sexual assaults against Ashley was in the context of only the charge involving Britney, that decision occurred prior to the consolidation of the two cases.  The two cases were later consolidated in November 2016.

¶55    The State again argues that other-acts evidence does not place a defendant in jeopardy of being convicted for offenses arising from the other acts. We agree that other-acts evidence generally does not place a defendant in jeopardy of being convicted for those offenses. *See Felix*, 503 U.S. at 387.  But the State's conduct here went beyond "simply introduc[ing]" such other acts into evidence. *See id.* As just explained, the State attempted to amend the Information before trial to include a count of incest, and when the circuit court denied the State's request, the prosecutor explicitly told the court that the evidence presented at trial might support later amending the Information to include a count of incest.  The prosecutor also repeatedly argued during the trial that the Information could be amended to conform to the evidence.  Again, the court had joined these two cases pursuant to the parties' stipulation.  There is no indication in the record that the prosecutor would not have sought to have charges added with respect to Ashley, and the State does not argue otherwise on appeal.

¶56    Finally, the State contends that a defendant cannot be put in jeopardy for an uncharged offense, such as with the incest charges here.  That may generally be true, but such an argument ignores the record of the first prosecution.  Again, we cannot ignore that the prosecutor frequently discussed amending the Information to add charges that would conform to the evidence.  Indeed, the prosecutor had an expressed strategy to accomplish such amendments by seeking amendments under WIS. STAT. § 971.29(2) after the evidence was admitted at trial.  Killian was therefore exposed to the risk that the jury might find him guilty of offenses that had not yet been charged but which the State likely would have later sought to include in an amended Information—i.e., incest offenses or offenses that had occurred before 1994. *See Williams*, 270 Wis. 2d 761, ¶23.

26

¶57 In short, the record of the first prosecution demonstrates that Killian was put at risk of being convicted of each offense currently charged based on Killian's sexual abuse of Ashley. In other words, Killian was in jeopardy in the first prosecution of being convicted of offenses that occurred as early as 1988, as well as being convicted of incest offenses from that time until 1999. Counts 1-9 are therefore—under the *Blockburger* test—identical in law and in fact to offenses for which Killian was in jeopardy of being convicted in the first prosecution. Accordingly, the circuit court properly dismissed Counts 1-9 for being prosecuted in violation of Killian's constitutional rights against double jeopardy.[11]

## CONCLUSION

¶58 To be clear, the outcome of this case is tied to, and limited by, its unique facts. In particular, we are mindful of the context in which the State purposely and egregiously induced a mistrial in the first case, with the express purpose of adding more charges in a later-filed case based on facts that had been

---

[11] The State suggests that the outcome in this case should be no different than that in *State v. Kurzawa*, 180 Wis. 2d 502, 509 N.W.2d 712 (1994). In *Kurzawa*, the defendant was acquitted on two counts of theft by fraud, and the State later charged him with fifty-four counts of uttering a forged check, which were premised on essentially the same conduct at issue in the first case. *Id.* at 505-06. The circuit court subsequently denied the defendant's motion to dismiss the new charges on double jeopardy grounds. *Id.* at 506-07. On appeal, our supreme court adopted "the analysis of [*United States v. Dixon*, 509 U.S. 688 (1993)] and *Blockburger* in double jeopardy cases involving successive prosecutions." *Kurzawa*, 180 Wis. 2d at 525. Applying the *Blockburger* test, the court concluded that the two prosecutions at issue involved different offenses and that the State could proceed in its prosecution on the fifty-four counts of uttering a forged check. *Kurzawa*, 180 Wis. 2d at 526-27.

Like *Kurzawa*, we apply the *Blockburger* test to determine whether the State's second prosecution violates Killian's constitutional rights against double jeopardy. To do so, however, we must examine the entire record of the first prosecution pursuant to *State v. Schultz*, 2020 WI 24, 390 Wis. 2d 570, ¶32, 939 N.W.2d 519, in order to determine whether Killian *was* in jeopardy of being convicted of offenses now charged in this case. Because Killian was, in fact, in jeopardy in the first prosecution of being convicted of the offenses now charged—circumstances which were not present in *Kurzawa*—we must conclude that the State cannot prosecute the present charges against Killian.

alluded to many times throughout the first case proceedings. Accordingly, we reject the State's argument that, under Killian's and our reasoning, "a defendant could commit 100 distinct crimes against a single victim and then, if the prosecutor intentionally causes a mistrial on three counts, the State could be barred from ever prosecuting the defendant for those other 97 crimes." Whatever the merit of the State's argument broadly speaking, the circumstances of *this* case, as we have explained, are significantly different than under this general proposition—and importantly so.

¶59 How and why the State induces a mistrial matters, especially for purposes of protecting a person's constitutional rights against double jeopardy. Indeed, the State's position on appeal would largely have us ignore the full extent of its misconduct in provoking the mistrial. The State's actions in the first prosecution, including its misconduct, placed Killian in jeopardy of conviction for offenses now charged in this case, and we cannot ignore this reality—even in the face of the types of crimes that Killian is alleged to have committed. The result of this appeal is compelled by the records in both cases—including the circuit court's factual findings in the first prosecution. The result here is also consistent with *Blockburger* and *Schultz*, as well as the constitutional protections afforded to all individuals charged with crimes.[12]

---

[12] After concluding that the State's charges against Killian in this case were barred by the Double Jeopardy Clause, the circuit court thoughtfully stated:

28

*By the Court.*—Order affirmed.

> I want the victims who are listening to hear that the [c]ourt did not discount what impacts this would have on the victims. I believe the [c]ourt is following the law here and—and, frankly, I feel terrible for the victims in this matter as they are on what I would call the opposite side of a windfall to the defendant due to the State's egregious conduct in [the first prosecution]; and I guess I'm just saying that because I don't want the victims to feel as though the [c]ourt did not think about that, and I did, and as I stated … I feel terrible for the fact that in a lot of ways here your day in court was cut short, and so I just wanted to state that I thought about that and I feel terrible.

The State's allegations against Killian, if true, are shocking and disheartening. We agree with and share the circuit court's sentiments.

2